2004 WY 106

**Alan J. CAMPBELL, Appellant (Defendant),**

**v.**

**The STATE of Wyoming, Appellee (Plaintiff).**

No. 03–128.

Supreme Court of Wyoming.

Sept. 13, 2004.

Representing Appellant: Dion J. Custis, Cheyenne, Wyoming.

Representing Appellee: Patrick J. Crank, Wyoming Attorney General; Paul S. Rehurek, Deputy Attorney General; D. Michael Pauling, Senior Assistant Attorney General; Daniel M. Fetsco, Assistant Attorney General; Terry L. Armitage, Assistant Attorney General. Argument by Mr. Armitage.

Before HILL, C.J., and GOLDEN, LEHMAN, KITE, and VOIGT, JJ.

GOLDEN, Justice.

[¶ 1] Appellant Alan J. Campbell entered a conditional plea of guilty to a charge of felony possession of marijuana with intent to deliver. He reserved the right to appeal the district court's denial of his motion to suppress evidence seized during a search of his vehicle. On appeal, Campbell argues that a highway patrolman violated his rights under the Fourth Amendment to the United States Constitution during a routine traffic stop. We conclude that the patrolman exceeded the reasonable scope of detention by asking Campbell whether he possessed any marijuana. Furthermore, Campbell did not volun-

tarily consent to extend the period of his detention for the canine sniff.

[¶ 2] We, therefore, reverse.

## ISSUES

[¶ 3] Campbell presents two issues on appeal:

I. Whether the First Judicial District Court, Laramie County, State of Wyoming, erred in it's [sic] *Order Denying Defendants'* [sic] *Motion to Suppress Evidence,* filed January 14, 2003.

II. It is a violation of a person's 4th Amendment rights to conduct a canine search of a vehicle or its contents without probable cause or a reasonable articulable suspicion of criminal activity[.]

Appellee State of Wyoming presents the appellate issues as:

I. Did the district court properly deny appellant's motion to suppress evidence?

II. Is a dog sniff of the exterior of a vehicle a search under the United States and Wyoming Constitutions?

## FACTS

[¶ 4] On October 5, 2002, Trooper David Chatfield of the Wyoming Highway Patrol was conducting a routine patrol on Interstate 80 in Laramie County. He was driving sixty miles per hour in the right lane when Campbell, who was driving a tan car, passed him in the left lane. Trooper Chatfield noticed that Campbell and his passenger both had their windows partially open even though it was cool outside. He also noticed that neither Campbell nor his passenger looked at him when they passed the patrol car.

[¶ 5] Campbell's car was licensed in Illinois, and Trooper Chatfield called dispatch and requested a computer check on the license plate number. The dispatcher informed Trooper Chatfield that the registration had expired, and, based upon that information, the trooper stopped Campbell's vehicle. Trooper Chatfield asked Campbell for his registration and driver's license. Campbell produced an Illinois driver's license and a handwritten Illinois vehicle registration card, which indicated

that his registration was current. Trooper Chatfield asked Campbell to accompany him back to his patrol car. Although Trooper Chatfield's drug detection dog was sitting in the back seat of the patrol car, Campbell did not acknowledge or comment about the dog. In the car, Trooper Chatfield examined the handwritten registration and requested that dispatch run a check on Campbell's driver's license. The dispatcher reported that Campbell's driver's license was valid.

[¶ 6] Campbell and Trooper Chatfield engaged in casual conversation while the trooper filled out a driver contact form, which indicated that Campbell had been stopped but that no citation or warning was issued. Campbell told the trooper that he was a student at the University of Illinois and was returning from a four-day trip to visit a friend at Colorado State University in Fort Collins. Just before handing him the completed driver contact form, Trooper Chatfield asked Campbell if he had any marijuana in his vehicle. Campbell denied possessing any controlled substances. The trooper then handed Campbell the form and asked if he could conduct a canine sniff of Campbell's vehicle. Campbell acquiesced to the trooper's request, and the dog alerted to the right side of Campbell's vehicle. Trooper Chatfield subsequently searched the vehicle and located more than eight pounds of marijuana.

[¶ 7] Campbell was arrested and charged with felony possession of a controlled substance with intent to deliver, in violation of Wyo. Stat. Ann. § 35–7–1031(a)(ii) (Count I), and felony possession of a controlled substance, in violation of Wyo. Stat. Ann. § 35–7–1031(c)(iii) (Count II). He filed a motion to suppress the evidence seized during the search of his car. Campbell claimed that the trooper violated his constitutional rights by improperly extending his detention in order to conduct a canine sniff of his vehicle. He also argued that a canine sniff is a search entitled to constitutional protection. The district court held a hearing on Campbell's suppression motion and heard testimony from Trooper Chatfield, the dispatch officer, and Campbell. At the conclusion of the hearing, the district court denied Campbell's motion

to suppress. The district court ruled that, although Trooper Chatfield did not have a reasonable suspicion of criminal activity to justify extending the detention, such detention was justified because Campbell voluntarily consented to allow the dog to sniff his vehicle.

[¶ 8] Campbell entered a conditional plea of guilty to Count I, reserving the right to appeal the district court's denial of his motion to suppress.[1] The district court sentenced him to serve three to five years in prison, but suspended the sentence and placed him on probation. Campbell filed a notice of appeal.

## DISCUSSION

### 1. *Standard of Review*

[¶ 9] When this Court reviews a district court's decision on a motion to suppress evidence, we do not disturb the district court's findings on factual issues unless they are clearly erroneous. *Meek v. State*, 2002 WY 1, ¶ 8, 37 P.3d 1279, ¶ 8 (Wyo.2002); *McChesney v. State*, 988 P.2d 1071, 1074 (Wyo.1999). The evidence is viewed in the light most favorable to the district court's determination because the district court conducts the hearing on the motion to suppress and has the opportunity to assess the credibility of the witnesses, weigh the evidence, and make the necessary inferences, deductions, and conclusions. *Id.* "When the district court has not made specific findings of fact, we will uphold its general ruling if the ruling is supportable by any reasonable view of the evidence." *Meek*, ¶ 8 (quoting *Frederick v. State*, 981 P.2d 494, 497 (Wyo.1999)). However, the issue of law—whether an unreasonable search or seizure has occurred in violation of constitutional rights—is reviewed *de novo*. *Damato v. State*, 2003 WY 13, ¶ 7, 64 P.3d 700, ¶ 7 (Wyo.2003). *See also Meadows v. State*, 2003 WY 37, ¶ 14, 65 P.3d 33,

¶ 14 (Wyo.2003); *Wilson v. State*, 874 P.2d 215, 218 (Wyo.1994).

### 2. *Detention*

[¶ 10] Campbell argues that the district court erred by denying his motion to suppress the evidence discovered during the search of his automobile. He claims that Trooper Chatfield violated his constitutional rights under the Fourth Amendment to the United States Constitution by illegally detaining him to conduct a canine sniff of his vehicle.[2]

[¶ 11] The Fourth Amendment to the United States Constitution protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures[.]" U.S. Const. amend. IV. A traffic stop amounts to a seizure under the Fourth Amendment. *Damato*, ¶ 9; *Innis v. State*, 2003 WY 66, ¶ 14, 69 P.3d 413, ¶ 14 (Wyo. 2003). *See also United States v. Wood*, 106 F.3d 942, 945 (10th Cir.1997). Under the principles of *Terry v. Ohio*, 392 U.S. 1, 19–20, 88 S.Ct. 1868, 1879, 20 L.Ed.2d 889 (1968), a court must determine whether the detention was reasonable by applying a two-part analysis. *Damato*, ¶ 9. First, this Court considers whether the initial stop was justified. *Id.* Secondly, we determine whether the officer's actions during the detention were "reasonably related in scope to the circumstances that justified the interference in the first instance." *Id.; see also Innis*, ¶ 14; *Wood*, 106 F.3d at 945.

[¶ 12] Campbell does not challenge the reasonableness of the initial stop; therefore, we turn directly to the second part of the analysis—the reasonableness of the detention. "An investigative detention must be temporary, lasting no longer than necessary to effectuate the purpose of the stop, and the scope of the detention must be carefully tailored to its underlying justification."

---

1. The State voluntarily dismissed Count II of the Information.

2. In his brief, Campbell indicates that he is relying on the Wyoming Constitution, as well as the Fourth Amendment, to support his argument that he was subjected to an illegal seizure and search. He does not, however, provide a sufficient state constitutional analysis. Consequently, we decline to consider his state constitutional argument. *See Gronski v. State*, 910 P.2d 561, 565–66 (Wyo.1996); *Saldana v. State*, 846 P.2d 604, 622–24 (Wyo.1993) (Golden, J., concurring); *Dworkin v. LFP, Inc.*, 839 P.2d 903, 909 (Wyo.1992).

*Wood,* 106 F.3d at 945 (citing *Florida v. Royer,* 460 U.S. 491, 500, 103 S.Ct. 1319, 1325–26, 75 L.Ed.2d 229 (1983)). During a routine traffic stop, a law enforcement officer may request the driver's proof of insurance, operating license, and vehicle registration, run a computer check, and issue a citation or warning. *Damato,* ¶ 13; *Burgos–Seberos v. State,* 969 P.2d 1131, 1133 (Wyo.1998). *See also United States v. Elliott,* 107 F.3d 810, 813 (10th Cir.1997); *Wilson,* 874 P.2d at 224. The officer may detain the driver and his vehicle only for the period of time reasonably necessary to complete these routine matters. *Damato,* ¶ 13; *Burgos–Seberos,* 969 P.2d at 1133; *Wood,* 106 F.3d at 945. Once the driver has produced a valid driver's license and proof that he is entitled to operate the vehicle, he must be allowed to proceed without further delay. *Damato,* ¶ 13; *Burgos–Seberos,* at 1133; *Wood,* at 945. During the stop, an officer generally may not ask the detained motorist questions unrelated to the purpose of the stop, including questions about controlled substances, unless the officer has reasonable suspicion of other illegal activity. *United States v. Jones,* 44 F.3d 860, 872 (10th Cir.1995).[3]

 [¶ 13] Trooper Chatfield testified at the suppression hearing that he questioned Campbell about whether he had "high grade" marijuana in his vehicle while he was filling out the driver contact form. The question about drugs was unrelated to the purpose of the initial stop—a possible expired registration—and, therefore, was proper only if the trooper had a reasonable articulable suspicion that Campbell was engaged in illegal activity. The district court ruled that Trooper Chatfield did not have a reasonable suspicion of criminal activity to support his drug question, and the State does not challenge that ruling on appeal. Consequently, Trooper Chatfield exceeded the reasonable scope of the detention and violated Campbell's

Fourth Amendment rights when he questioned him about drugs.

 [¶ 14] The conclusion that Trooper Chatfield's question about drugs exceeded the permissible scope of the detention does not, however, complete our inquiry. Under certain circumstances, a driver may voluntarily consent to an extended detention and/or a search even though the officer's request is preceded by a Fourth Amendment violation. *United States v. McSwain,* 29 F.3d 558, 562 (10th Cir.1994); *United States v. Fernandez,* 18 F.3d 874, 881 (10th Cir. 1994). "The government bears the burden of proving the voluntariness of consent, and that burden is heavier when consent is given after an illegal stop." *Fernandez,* 18 F.3d at 881 (citation omitted). In determining whether a detained motorist freely and voluntarily consented to a further detention or search after an illegal detention, we must consider the totality of the circumstances surrounding the consent, with a focus upon three factors outlined in *Brown v. Illinois,* 422 U.S. 590, 603–04, 95 S.Ct. 2254, 2261–62, 45 L.Ed.2d 416 (1975): "the temporal proximity of the illegal detention and the consent, any intervening circumstances, and, particularly, the purpose and flagrancy of the officer's unlawful conduct." *United States v. Walker,* 933 F.2d 812, 818 (10th Cir.1991). In other words, the State had the burden of establishing that Campbell's consent was "sufficiently an act of free will to purge the primary taint of the illegal [detention], [or] it must be suppressed as fruit of the poisonous tree." *United States v. Maez,* 872 F.2d 1444, 1453 (10th Cir.1989). *See also Fernandez,* 18 F.3d at 881–82. Although the district court did not analyze the *Brown* factors, there is sufficient evidence in the record for us to review this issue. *See McSwain,* 29 F.3d at 562; *Fernandez,* 18 F.3d at 881–82 n. 7.

[¶ 15] The record reveals that Trooper Chatfield asked Campbell to join him in his patrol car while he reviewed the registration,

---

**3.** In *United States v. Holt,* 264 F.3d 1215 (10th Cir.2001), on rehearing *en banc,* a divided Tenth Circuit Court of Appeals recognized an exception to the general rule that the scope of the questions must be related to the reason for the stop. The Tenth Circuit ruled that, even though the officer does not have a reasonable basis for the question, he may ask a motorist about the presence of weapons in order to assure his safety. *Id.* at 1223. The *Holt* decision did not, however, authorize questioning about matters which do not implicate officer safety, such as possession of drugs. *Id.* at 1229–30.

ran a check on Campbell's driver's license, and filled out a driver contact form. Trooper Chatfield did testify that he gave Campbell the driver contact form immediately after he asked about the drugs but before he deployed his dog to sniff the car. However, contrary to the assertion by the State that neither Trooper Chatfield nor Campbell testified as to when Trooper Chatfield returned Campbell's driver's license and registration to him, our review of the record indicates otherwise. During redirect examination of Trooper Chatfield by the prosecution, the following exchange occurred:

Q. Also you indicated that you had given the citation, this driver contact sheet, to the defendant before you ran your dog?

A. That's correct.

Q. When did you give him back his driver's license, insurance, all of those other documents as well?"

A. At the same time.

Q. At the same time?

A. (Witness nodded head.)

Q. So before you ever actually ran your dog the defendant had all of his documents back?

A. That's correct.

The district court, however, did not make any specific findings about when the documents were returned. This issue is important because, unless the officer returns the driver's documentation, the driver is not free to leave and the encounter is not consensual. *United States v. Soto,* 988 F.2d 1548, 1555 (10th Cir.1993). Therefore, based upon the testimony of Trooper Chatfield, we find that the trooper had returned Campbell's documentation when he handed him the driver contact form.

[¶ 16] Campbell testified that the conversation with Trooper Chatfield was "casual" until he asked about the drugs. Immediately after Campbell denied that he had any drugs in his car, the trooper returned his documentation and asked for permission to conduct a canine sniff of his car. The trooper did not tell Campbell that he was free to leave the scene or that Campbell could refuse to give his consent to the continued detention and dog sniff. Although not conclusive, the fact that a detained motorist is not informed that he is free to leave is a noteworthy factor in determining whether consent was voluntary. *Fernandez,* 18 F.3d at 882. Similarly, the failure to advise a detained motorist that he may refuse consent to further detention may be important. *Id.*

[¶ 17] The determination of whether or not Campbell voluntarily consented to the additional detention is a close one. There are factors which cut in favor of the district court's ruling and factors which undermine it. However, once we superimpose the *Brown* factors upon the facts of this case, there is no doubt that Campbell's consent was tainted by the prior unlawful detention.

[¶ 18] Campbell gave his verbal assent to Trooper Chatfield's request immediately after the improper questioning, and there were absolutely no intervening circumstances. Other cases have held that the taint of an illegal detention is not purged even when several minutes passed between the time of the illegal seizure and the request for consent. *See e.g., Fernandez,* 18 F.3d at 883; *McSwain,* 29 F.3d at 563. Thus, the first two *Brown* factors weigh heavily in favor of a finding that the taint of the illegal detention was not purged. The facts clearly establish that there was "no break in the causal connection between the illegality and the evidence thereby obtained." *Fernandez,* 18 F.3d at 883 (quoting *United States v. Recalde,* 761 F.2d 1448, 1458 (10th Cir.1985)).

[¶ 19] The third *Brown* factor focuses on the purpose and flagrancy of Trooper Chatfield's conduct. *Fernandez,* 18 F.3d at 883. Like the first two factors, this factor weighs against a finding that the taint was purged. The trooper testified that he became suspicious that Campbell may have some marijuana in his vehicle because: 1) Campbell was a college-aged person; 2) he was traveling from Fort Collins, Colorado (a city which Trooper Chatfield knew was a source area for high grade marijuana); 3) Campbell's trip was short in duration; 4) Campbell seemed somewhat nervous and tense; and 5) he did not acknowledge the dog.

[¶ 20] When the State presented these facts to the district court in support of its

theory that the trooper had reasonable suspicion to further detain Campbell, the judge dismissed that argument as untenable. In fact, the district judge commented that the facts relied upon by the State would apply to half of the college kids from Cheyenne when traveling to Fort Collins. We agree with the district court's assessment of the evidence. The factors relied upon by the trooper to justify his suspicion were as consistent with innocence as with guilt. *See Damato,* ¶¶ 18–26; *Fernandez,* 18 F.3d at 883.

[¶ 21] Trooper Chatfield embarked on a fishing expedition "in the hope that something might turn up." *Brown,* 422 U.S. at 605, 95 S.Ct. at 2262. That type of purposeful probing is not permitted by the Fourth Amendment. *Id.; see also Fernandez,* 18 F.3d at 883. The trooper's conduct does not support a finding that the taint of the prior illegal questioning was purged. We conclude, therefore, that Campbell's consent to the extended detention to allow the canine sniff was not voluntary. His rights under the Fourth Amendment were violated, and the district court erred by denying his motion to suppress.

### 3. *Dog Sniff*

[¶ 22] Campbell claims that the dog sniff was a search, entitled to Fourth Amendment protection. Since we have already determined that his consent to the prolonged detention was not valid, it is not necessary for us to reach this issue. Nevertheless, it is worth noting that we recently decided in *Morgan v. State,* 2004 WY 95, ¶¶ 10–18, 95 P.3d 802, ¶¶ 10–18 (Wyo.2004), that a dog sniff is not a search entitled to protection under the Fourth Amendment to the United States Constitution.

[¶ 23] The Order denying Campbell's suppression motion is reversed, and this case is remanded to the district court to allow Campbell to withdraw his guilty plea pursuant to W.R.Cr.P. 11(a)(2).