2005 WY 141

Jason Carl RIDEOUT, Appellant (Defendant),

v.

The STATE of Wyoming, Appellee (Plaintiff).

Michael Scott Rideout, Appellant (Defendant),

v.

The State of Wyoming, Appellee (Plaintiff).

Nos. 04–260, 04–261.

Supreme Court of Wyoming.

Oct. 28, 2005.

Representing Appellants: Stuart S. Healy of Healy Law Firm, Sheridan, Wyoming.

Representing Appellee: Patrick J. Crank, Wyoming Attorney General; Paul S. Rehurek, Deputy Attorney General; D. Michael Pauling, Senior Assistant Attorney General; and Jennifer A. Golden, Senior Assistant Attorney General. Argument by Ms. Golden.

Before HILL, C.J., and KITE, VOIGT, and BURKE JJ., and BROOKS, D.J.

HILL, Chief Justice.

[¶1] In these consolidated cases, Jason Carl Rideout (J.C. Rideout) and his brother, Michael Scott Rideout (Scott Rideout) (collectively referred to as the Defendants) appeal a district court order denying their motions to suppress marijuana and associated paraphernalia seized from J.C. Rideout's residence after police officers effectuated a warrantless entry to secure the residence after detecting the odor of marijuana emanating from the residence and from Scott Rideout's person. We affirm.

## ISSUES

[¶2] The Defendants filed virtually identical appellate briefs. The issue they present is:

Did the District Court err in denying [Defendants'] Motion to Suppress by finding the State had sustained its burden of proving that the forcible entry into [Defendants'] home was justified under the "exi-

gent circumstances" exception to the search warrant requirements of the Constitutions of the United States of America and the State of Wyoming?

The State offers a slightly different statement of the same issue:

Whether the district court properly denied [Defendants'] Motions to Suppress Evidence obtained from Appellant Jason Carl Rideout's residence following two officers' warrantless entry to secure the residence and subsequent search pursuant to consent and a search warrant.

## FACTS

[¶ 3] J.C. Rideout was arrested and incarcerated in the Sheridan County Detention Center on February 14, 2004, on charges unrelated to the current proceedings. Around 10:00 p.m. on February 16, 2004, it was noticed that a piece of metal framing was missing from a window in the Detention Center. A search of two adjoining cell blocks was commenced. Sergeant Kody Lamb and his canine unit were called to assist in the search. After the search of the cell block was completed, Sergeant Lamb suggested that he take his dog through the Detention Center property room where prisoners' personal effects were stored during their term of incarceration. The dog alerted on the bag containing J.C. Rideout's property. Inside of a jacket, a portion of a marijuana joint was found in a cigarette packet.

[¶ 4] Sergeant Lamb interviewed J.C. Rideout, who denied knowledge of the marijuana, claiming that he had grabbed a jacket belonging to his friend, Jeremy Chacon, when he was arrested. Since J.C. Rideout had been arrested at his own residence, Sergeant Lamb inquired whether Jeremy Chacon could be found there. J.C. Rideout replied "no" and provided some vague directions to where Jeremy Chacon resided. Sergeant Lamb subsequently received information that a Justin Chacon was living at J.C. Rideout's residence. Sergeant Lamb suspected that J.C. Rideout may have confused names. Wanting to contact Jeremy Chacon before J.C. Rideout had an opportunity to do so, he asked Sheridan County Deputy Sheriffs Ryan Mulholland and Casey Cunningham to go by J.C. Rideout's residence, and if there was any activity, to contact the residents.

[¶ 5] The deputies arrived at the residence at about 1:28 a.m. on February 17. The lights were on inside the residence and as the deputies exited their vehicle, they immediately recognized the smell of burnt marijuana. The odor became "more obvious" as they approached the residence. As they were climbing the stairs to the front door, the deputies observed through a picture window someone moving quickly from the dining room area in the front of the house toward the back. At the front door, the odor of burnt marijuana was "fairly strong." They knocked on the door but there was no answer. After the deputies knocked a second time, Scott Rideout opened the door, slipped out, and closed it behind him.

[¶ 6] Deputy Mulholland smelled marijuana on Scott Rideout, who denied smoking anything other than cigarettes. Scott Rideout informed the deputies that Jeremy Chacon was not at the residence and that Justin Chacon, not Jeremy, lived there. Scott Rideout offered to get Justin. Deputy Mulholland agreed but asked Scott Rideout to call for him from the front door and not to go inside the residence. When Scott Rideout opened the door, the deputies received a "very strong" odor of burnt marijuana.

[¶ 7] At that point, the deputies concluded that the smell of burnt marijuana established probable cause that a misdemeanor crime—possession of a controlled substance—was being committed. The deputies decided to enter the residence and secure it before seeking a search warrant in order to prevent the destruction of any evidence.

[¶ 8] Once inside the residence, the deputies observed in plain view marijuana seeds and approximately a quarter ounce of marijuana in plastic containers on the dining room table along with six small marijuana plants growing in a planter by the table. Justin Chacon was located in the kitchen area and brought to the dining room, where he and Scott Rideout were advised that they

were under investigative detention and were read their *Miranda*[1] rights.

[¶ 9]   Both Justin Chacon and Scott Rideout agreed to answer questions.   Justin Chacon admitted to smoking marijuana with a friend, who had left and whom he would not identify, about 45 minutes before the deputies arrived.   He also denied that the marijuana found in J.C. Rideout's property belonged to his brother, Jeremy Chacon. Justin Chacon denied a request for consent to search the residence claiming that he did not have the authority to do so as he only lived there, and that any consent to search was up to J.C. Rideout.   Similarly, Scott Rideout refused the request for consent to search because he did not live there.   Justin Chacon and Scott Rideout were then placed under arrest for possession of a controlled substance.

[¶ 10]   After the evidence found in plain view was secured, Deputy Mulholland left to secure a search warrant.   Meanwhile, Sergeant Lamb contacted J.C. Rideout and obtained his consent to search the residence. The officers returned to the residence and began to search it, with the exception of Justin Chacon's room, which they concluded required a search warrant since he had refused consent.   The search of the residence revealed numerous items related to drug trafficking, including a bag of marijuana weighing just under a pound in the kitchen, along with small amounts of marijuana in various other rooms, a large quantity of plastic baggies, forty $20 dollar bills, and a suspected drug ledger.

[¶ 11]   The case was turned over to officers from the Wyoming Department of Criminal Investigation (DCI), who obtained a search warrant for Justin Chacon's room, and J.C. and Scott Rideout's vehicles, as well as their financial records.   The search of Justin Chacon's room disclosed a digital scale, gallon size plastic baggies, and a small quantity of marijuana.   A small amount of marijuana and what appeared to be ledgers detailing drug transactions were found in Scott Rideout's vehicle.   Similar documents were located in J.C. Rideout's vehicle.

[¶ 12]   Later in the day on February 17, DCI interviewed all three subjects individually.   J.C. Rideout disclosed that the residence was owned by his mother.   He admitted that he wired money to Scott Rideout, who would bring marijuana from his home in Arizona to Sheridan in one- to two-pound quantities. Justin Chacon acknowledged that the marijuana and digital scale found in his room were his.   He also claimed that Scott Rideout was bringing marijuana to Wyoming from Arizona.   Scott Rideout only admitted that he had brought the marijuana found on the dining table from Arizona.   The search of the Rideouts' financial records confirmed that significant sums of money had been wired from J.C. Rideout to his brother in Arizona.

[¶ 13]   J.C. Rideout was charged with one count of possession of a Schedule I controlled substance (marijuana) with intent to deliver in violation of Wyo. Stat. Ann. § 35–7–1031(a)(ii) (LexisNexis 2005). Scott Rideout was charged with one count of possession of a Schedule I controlled substance (marijuana) in an amount greater than three ounces in violation of Wyo. Stat. Ann. § 35–7–1031(c)(iii) (LexisNexis 2005).   The Defendants pleaded not guilty and filed separate motions to suppress the evidence seized from the residence.   After a hearing, the district court denied the motions finding that the smell of burnt marijuana gave the officers probable cause to believe that a crime was being committed within the residence and that exigent circumstances existed justifying a warrantless entry of the residence to secure it and preserve evidence of the crime. Thereafter, the Defendants entered into a plea agreement wherein they pleaded guilty to the respective charges against them while reserving the right to challenge on appeal the district court's order denying the motions to suppress.   The Defendants' consolidated appeals are now before us.

## STANDARD OF REVIEW

[¶ 14]   The   standard   we   apply when reviewing a district court's ruling on a motion to suppress is well established:

---

1.  *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct.   1602, 16 L.Ed.2d 694 (1966).

We generally do not disturb evidentiary rulings made by a trial court unless the trial court abused its discretion. *Wilson v. State*, 874 P.2d 215, 218 (Wyo.1994). In reviewing a trial court's ruling on a motion to suppress evidence, we do not interfere with the trial court's findings of fact unless the findings are clearly erroneous. *Gehnert v. State*, 956 P.2d 359, 361 (Wyo.1998). We view the evidence in the light most favorable to the trial court's determination because the trial court has an opportunity at the evidentiary hearing to assess "the credibility of the witnesses, weigh the evidence, and make the necessary inferences, deductions, and conclusions." *Id.* The constitutionality of a particular search or seizure is, however, a question of law that we review *de novo. Id.; Jones v. State*, 902 P.2d 686, 690 (Wyo.1995).

*Hughes v. State*, 2003 WY 35, ¶10, 65 P.3d 378, 381 (Wyo.2003) (quoting *Martindale v. State*, 2001 WY 52, ¶9, 24 P.3d 1138, [1140–41] (Wyo.2001), and *Putnam v. State*, 995 P.2d 632, 635 (Wyo.2000)). *See also Pena v. State*, 2004 WY 115, ¶25, 98 P.3d 857, 869 (Wyo.2004).

[¶15] In their motions to suppress and in their briefs on appeal, the Defendants contended that the police entry into the residence violated Article 1, Section 4, of the Wyoming Constitution as well as the Fourth Amendment of the United States Constitution. The Defendants do not provide an independent state constitutional analysis. "A failure to present a sufficient argument supporting 'adequate and independent state grounds,' . . . prevents this court, as a matter of policy, from considering other than the federal constitutional principles at issue. . . ." *Vassar v. State*, 2004 WY 125, ¶14, 99 P.3d 987, 993 (Wyo.2004) (quoting *Wilson v. State*, 874 P.2d 215, 219 (Wyo.1994), and *Michigan v. Long*, 463 U.S. 1032, 1041, 103 S.Ct. 3469, 77 L.Ed.2d 1201 (1983)). Accordingly, our analysis of the issues presented in this case will be pursuant to the Fourth Amendment

to the United States Constitution. *Vassar*, 99 P.3d at 993.

## DISCUSSION[2]

[¶16] The Defendants raise several arguments contesting the legality of the officers' warrantless entry into J.C. Rideout's residence. The Fourth Amendment to the United States Constitution protects citizens from unreasonable searches and seizures. *Gompf v. State*, 2005 WY 112, ¶17, 120 P.3d 980, 985 (Wyo.2005).

> "It is axiomatic that the physical entry of the home is the chief evil against which the wording of the Fourth Amendment is directed." *State v. Straub*, 749 N.E.2d 593, 597 (Ind.Ct.App.2001) (quoting *United States v. United States District Court*, 407 U.S. 297, 313, 92 S.Ct. 2125, 32 L.Ed.2d 752 (1972)). '[A] home is entitled to special dignity and special sanctity and . . . the proper way to search a home is to obtain a search warrant.' *Brown v. State*, 738 P.2d 1092, 1094 (Wyo.1987). Thus, searches and seizures inside a home without a warrant are presumptively unreasonable, but there are a "few . . . carefully delineated" exceptions to the warrant requirement. *Vassar v. State*, 2004 WY 125, ¶19, 99 P.3d 987, ¶19 (Wyo.2004). Consent and the existence of exigent circumstances are two of the exceptions to the warrant requirement. *Pena v. State*, 2004 WY 115, ¶29, 98 P.3d 857, ¶29 (Wyo.2004); *Meadows v. State*, 2003 WY 37, ¶29, 65 P.3d 33, ¶29 (Wyo.2003).

*Id.*

[¶17] Initially, the Defendants claim that the odor of burnt marijuana, standing alone, is not sufficient to establish probable cause. We have little trouble in finding that it may give an officer probable cause to search or arrest. *See Gompf*, ¶20, 120 P.3d. 980. In a case where police officers effectuated a warrantless entry of a motel room based on the smell of marijuana

---

2. The State argues for the first time on appeal that Scott Rideout lacks standing to challenge the legality of the warrantless entry because he had no reasonable expectation of privacy in the residence. The State's argument raises the question of whether it should be allowed to raise the question on appeal when it did not do so before the trial court. Since we affirm the district court's ruling denying Scott Rideout's motion to suppress, we need not address that question today.

emanating from it, the Colorado Supreme Court discussed the same claim:

We have previously held that the smell of burning marijuana may give an officer probable cause to search or arrest. See *People v. Baker*, 813 P.2d 331, 333 (Colo. 1991). In Baker, police officers effected a valid warrantless entry of the defendant's home based upon probable cause and exigent circumstances. After knocking on the defendant's door for the purpose of investigating an outstanding arrest warrant, police were greeted by the defendant. The officers smelled the pungent odor of burning marijuana emanating from inside the house. The defendant attempted to warn someone else in the house that the police were at the door, then attempted to shut the door. The police then entered the home and discovered evidence of drug possession and use. See *Baker*, 813 P.2d at 332. We held that under those circumstances, "the officers had probable cause to believe a crime was being committed when they smelled burned marijuana." *Id.* at 333; see also *People v. Stephenson*, 187 Colo. 94, 96, 529 P.2d 1333, 1334 (1974) (holding that officer had probable cause to arrest defendant after smelling burning marijuana emanating from the defendant's hand-rolled cigarette). We now take this opportunity to reaffirm our holding in *Baker*.

The origins of the use of smell to support a finding of probable cause to search can be traced to *Johnson v. United States*, 333 U.S. 10, 68 S.Ct. 367, 92 L.Ed. 436 (1948). In *Johnson*, police conducted a warrantless search of the defendant's hotel room after detecting the smell of burning opium in the hallway outside the room. While the Court ultimately concluded that no exigent circumstances existed in that case to justify excusing the warrant requirement, the Court was careful to point out:

If the presence of odors is testified to before a magistrate and he finds the affiant qualified to know the odor, and it is one sufficiently distinctive to identify a forbidden substance, this Court has never held such a basis insufficient to justify issuance of a search warrant. *Indeed it might very well be found to be evidence of most persuasive character.*

*Johnson*, 333 U.S. at 13, 68 S.Ct. 367, 92 L.Ed. 436 (emphasis added). Since the *Johnson* decision, numerous courts have held that probable cause to search exists when a trained officer detects the distinctive odor of marijuana emanating from a particular place. See *United States v. Nicholson*, 17 F.3d 1294, 1297 (10th Cir.1994); *United States v. Thomas*, 12 F.3d 1350, 1366 (5th Cir.1994); *United States v. Garza*, 10 F.3d 1241, 1246 (6th Cir.1993); *United States v. Tobin*, 923 F.2d 1506, 1510 (11th Cir.1991); *United States v. Kerr*, 876 F.2d 1440, 1445 (9th Cir.1989); see also 2 Wayne R. LaFave, *Search and Seizure* 3.6(b) (3d ed.1996). Likewise, we find that common sense dictates that the smell of burning marijuana gives rise to a very high probability that the search of a particular place will reveal contraband or evidence of a crime. [Footnote omitted]

In holding that probable cause existed in this case, we emphasize that the smell of burning marijuana is sufficiently distinctive as to be readily identifiable to a trained police officer. See, e.g., *United States v. Nielsen*, 9 F.3d 1487, 1491 (10th Cir.1993); *United States v. DeLeon*, 979 F.2d 761, 764–65 (9th Cir.1992); *People v. Titus*, 880 P.2d 148, 156 (Colo.1994) (Mullarkey, J., dissenting).

*Mendez v. People*, 986 P.2d 275, 280–81 (Colo.1999).[3] See also *United States v. Humphries*, 372 F.3d 653, 657–60 (4th Cir. 2004); *Cherry v. Commonwealth*, 44 Va.App. 347, 605 S.E.2d 297, 302–03 (Va.App.2004); and *State v. South*, 885 P.2d 795, 798–99 (Utah App.1994), *reversed and remanded on other grounds* 924 P.2d 354 (Utah 1996). We hold that the deputies had probable cause to believe that a crime had been or was being committed within the residence. We now turn to the question of whether exigent circumstances existed.

3. We note that the Defendants do not challenge the deputies' qualifications to identify the odor emanating from the residence as marijuana in this case.

[¶ 18] The recognized exigent circumstances include:

> 1) search of an arrested suspect and the area within his control; 2) a search conducted while in hot pursuit of a fleeing suspect; 3) a search and/or seizure to prevent the imminent destruction of evidence; 4) a search and/or seizure of an automobile upon probable cause; 5) a search which results when an object is inadvertently in the plain view of police officers while they are where they have a right to be; 6) a search and/or seizure conducted pursuant to consent; and 7) a search which results from an entry into a dwelling in order to prevent loss of life or property.

*Hughes,* 65 P.3d 378, 382 (Wyo.2003) (quoting *Andrews v. State,* 2002 WY 28, ¶ 18, 40 P.3d 708, ¶ 18 (Wyo.2002), and *Dickeson v. State,* 843 P.2d 606, 610 (Wyo.1992)). "The existence of exigent circumstances is dependent upon all of the facts or circumstances viewed in their entirety. If such facts reflect the danger or destruction of valuable evidence, exigent circumstances are present." *Hughes,* 65 P.3d at 382 (quoting *Jones v. State,* 902 P.2d 686, 691 (Wyo.1995), and *Patterson v. State,* 691 P.2d 253, 258 (Wyo. 1984)).

[¶ 19] The district court found that exigent circumstances existed justifying the warrantless entry into the residence. Specifically, the court concluded that it was reasonable for the deputies to suspect that once the occupants were aware of the officers' presence, that there was a possibility that any evidence of contraband would be destroyed. The Defendants contest this finding. They claim that there were no exigent circumstances. In particular, they argue that the odor of marijuana by itself is insufficient to provide exigent circumstances justifying a warrantless entry. They insist that there were no other facts to support the deputies' decision to enter the residence. In addition, the Defendants assert that to the extent exigent circumstances existed, they were created by the deputies themselves when they approached the residence despite detecting the odor of marijuana when they had exited their vehicles—the deputies should have left the premises at that point to obtain a search warrant.

[¶ 20] The impetus for the deputies' presence at the residence was the discovery of marijuana in J.C. Rideout's property at the Sheridan County Detention Center. Suspicious of the explanation regarding the provenance of the jacket in which the marijuana was found and wanting to act before J.C. Rideout had an opportunity to contact anyone, the officer in charge of the Detention Center asked two deputy sheriffs to go to J.C. Rideout's home and attempt to verify the story with the other residents. The deputies had a legitimate investigative reason for going to J.C. Rideout's residence.

[¶ 21] The deputies arrived at the residence at about 1:28 a.m. The lights were on inside the residence indicating that the occupants were still awake. "The prevailing rule is that, absent a clear expression by the owner to the contrary, police officers are permitted to approach a dwelling and seek permission to question an occupant in the course of their official business." *Gompf,* ¶ 23, 120 P.3d. 980(citing *Scott v. State,* 347 Ark. 767, 67 S.W.3d 567, 575 (2002)). While the presence of the deputies may have been "unexpected and surprising," there is no evidence that the occupants "clearly indicated to the public or law enforcement that they were not welcome to approach the front door of the residence." *Gompf,* ¶ 25, 120 P.3d. 980.

[¶ 22] After exiting their vehicle, the deputies immediately noticed the odor of burnt marijuana. The odor became stronger as the officers' approached the front door. As they approached the door, they noticed through a picture window someone in the residence observing them and then moving quickly out of view to the back of the home. At the front door, the marijuana odor was "fairly strong." Scott Rideout answered the door after the second time the officers had knocked. He exited the residence by partially opening the door, slipping out, and then closing it. The deputies could smell marijuana on Scott Rideout's person. When he opened the front door to call out to Justin Chacon, the odor of marijuana emanating from the residence was "very strong." It is at that point that the officers concluded they had probable cause

that a crime was being committed and entered the residence to secure it to prevent the destruction of any evidence pending a search warrant.

[¶ 23] We conclude that these facts support the district court's finding that sufficient exigent circumstances existed to justify the warrantless entry, and that the exigencies were not of the deputies' making. The deputies had a legitimate law enforcement purpose for their presence at the residence for which they were permitted to approach and seek to speak with the occupants. The deputies testified that they did not have probable cause that a crime was being committed until after they had spoken with Scott Rideout and smelled marijuana on his person and emanating from inside the residence. When the deputies exited their vehicle and smelled the marijuana, there is nothing in the record to indicate that they could tie the odor to the residence itself, let alone the occupants. The possibility existed that the source of the odor was somewhere other than within the residence. Without probable cause that a crime was being or had been committed within the residence, the deputies could not have obtained a search warrant at that time. Before the deputies could establish probable cause that a crime was being committed within the residence, their presence was noted by the occupants when someone observed them through a picture window walking up to the front door. That person then moved quickly toward the back of the residence where he could not be observed. When Scott Rideout responded to the deputies' knock on the door, he exited the residence in a manner suggesting that there was something inside of which he did not want the deputies to become aware.

[¶ 24] Once the deputies had established probable cause that a crime was being committed within the residence because of the odor emanating from inside and from Scott Rideout's person, the deputies were confronted with a situation in which their presence was known to the occupants. Any evidence could have been easily destroyed before the deputies would have had an opportunity to obtain a search warrant. *Hughes*, 65 P.3d at 382 (citing *Patterson v. State*, 691 P.2d 253,

258 (Wyo.1984)); *see also Mendez v. People*, 986 P.2d 275, 282 (Colo.1999) (odor of marijuana emanating from motel room indicated that evidence of a crime, possession of marijuana, was in the process of being destroyed justifying a warrantless entry); *Cherry v. Commonwealth*, 44 Va.App. 347, 605 S.E.2d 297, 304–05 (2004) (warrantless entry into residence justified upon officer's detection of marijuana odor where the occupants' awareness of his presence made it likely that both the drugs and the occupants would be gone before a warrant could be secured). Given the furtive movements of the individual when the deputies approached the residence and their knowledge that at least one other person—Justin Chacon—was inside, it was reasonable for the deputies to fear destruction of evidence if they exited the premises and waited for a search warrant.

[¶ 25] The ultimate question is the reasonableness of the deputies' conduct. *Hughes*, 65 P.3d at 383. The deputies possessed probable cause that a crime was being committed within the residence. Exigent circumstances existed justifying a warrantless entry to secure the residence and prevent destruction of any evidence. Once inside, the deputies located all persons present in the house. They seized some evidence that was in plain view but otherwise did not search the residence until J.C. Rideout had given his consent and a warrant had been obtained for Justin Chacon's room. *See Hughes*, 65 P.3d at 383. The deputies acted reasonably under the circumstances.

[¶ 26] The Defendants also contend that the destruction of the evidence does not constitute an exigent circumstance sufficient to justify a warrantless entry because the crime for which the deputies had probable cause that was being committed, possession of marijuana, is a minor, misdemeanor offense. The Defendants cite in support of their argument the United States Supreme Court's decision in *Welsh v. Wisconsin*, 466 U.S. 740, 104 S.Ct. 2091, 80 L.Ed.2d 732 (1984). There, a witness observed Welsh drive erratically, go off the road, and come to a rest in an open field. *Id.* at 742, 104 S.Ct. 2091. Welsh walked away from the accident scene. *Id.* When the police arrived, they checked the

vehicle registration, learned that it was registered to Welsh and that his residence was a short distance away, easily within walking distance. *Id.* Without securing a warrant, the police proceeded to Welsh's home, arriving about 9:00 p.m. *Id.* at 743, 104 S.Ct. 2091. When Welsh's stepdaughter answered the door, the police entered the residence and proceeded to the upstairs bedroom where they arrested Welsh for driving or operating a motor vehicle while under the influence of an intoxicant. *Id.* At the time, Wisconsin law provided that a first offense for driving while intoxicated was a non-criminal violation subject to a civil forfeiture and a maximum fine of $200.00 with no potential jail time. *Id.* at 746, 104 S.Ct. 2091.

[¶ 27] The Court began its analysis by noting that physical intrusion into a person's home "... is the chief evil against which the wording of the Fourth Amendment is directed" and that a basic principle of Fourth Amendment law is that "searches and seizures inside a home without a warrant are presumptively unreasonable." *Welsh,* 466 U.S. at 748–49, 104 S.Ct. 2091 (quoting *Payton v. New York,* 445 U.S. 573, 586, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980)). In accord with those principles, the Court noted that it had allowed warrantless intrusions into the home for a felony arrest only if probable cause and exigent circumstances were present. *Id.* at 749, 104 S.Ct. 2091 (citing *Payton,* 445 U.S. at 583–90, 100 S.Ct. 1371). The Court expressed hesitation in finding exigent circumstances when warrantless arrests in the home were at issue, particularly when the underlying offense for which there was probable cause to arrest was relatively minor. *Id.* at 750, 104 S.Ct. 2091. The Court declared that the presumption of unreasonableness that attaches to all warrantless home entries is difficult to rebut when the government's interest is only to arrest for a minor offense. *Id.* After noting that most lower courts that had addressed the issue had refused to permit warrantless home arrests for non-felonious crimes, the Court reached its holding:

> We therefore conclude that the common-sense approach utilized by most lower courts is required by the Fourth Amendment prohibition on "unreasonable

searches and seizures," and hold that an important factor to be considered when determining whether any exigency exists is the gravity of the underlying offense for which the arrest is being made. Moreover, although no exigency is created simply because there is probable cause to believe that a serious crime has been committed, see *Payton,* application of the exigent-circumstances exception in the context of a home entry should rarely be sanctioned when there is probable cause to believe that only a minor offense, such as the kind at issue in this case, has been committed.

. . . .

> ... The State of Wisconsin has chosen to classify the first offense for driving while intoxicated as a noncriminal, civil forfeiture offense for which no imprisonment is possible. [Statutory citations omitted] This is the best indication of the State's interest in precipitating an arrest, and is one that can be easily identified both by the courts and by officers faced with a decision to arrest. [Citation omitted] Given this expression of the State's interest, a warrantless home arrest cannot be upheld simply because evidence of the petitioner's blood-alcohol level might have dissipated while the police obtained a warrant. [Footnote omitted] To allow a warrantless home entry on these facts would be to approve unreasonable police behavior that the principles of the Fourth Amendment will not sanction.

*Welsh,* 466 U.S. at 753–54, 104 S.Ct. 2091.

[¶ 28] Seventeen years later, the United States Supreme Court revisited the *Welsh* decision in *Illinois v. McArthur,* 531 U.S. 326, 121 S.Ct. 946, 148 L.Ed.2d 838 (2001). There, the police accompanied McArthur's wife to the couple's trailer so that she could remove her belongings without harassment. *Id.* at 328, 121 S.Ct. 946. After collecting her belongings, she told the officers that McArthur had drugs in the trailer. *Id.* at 329, 121 S.Ct. 946. McArthur, who was standing outside the trailer on the porch, denied the officers permission to search the trailer. *Id.* While one officer left to obtain a warrant,

another stayed at the trailer and informed McArthur that he could not re-enter the trailer unless an officer accompanied him. *Id.* Once the warrant was issued, the officer searched the trailer and recovered a marijuana pipe, a box for marijuana, and a small amount of the drug. *Id.*

[¶ 29] The Court went on to hold that the restrictions imposed upon McArthur's liberty were reasonable, and hence lawful, under the circumstances. *McArthur,* 531 U.S. at 331–33, 121 S.Ct. 946. For our purposes, the decision in *McArthur* is relevant because the Court addressed an argument by McArthur that the misdemeanor crimes for which he was convicted were minor in nature and did not justify the restraint imposed—keeping him out of his home—which he contended was "nearly as serious" as the warrantless entry in *Welsh. Id.* at 335–36, 121 S.Ct. 946. The Court responded:

> We nonetheless find significant distinctions. The evidence at issue here was of crimes that were "jailable," not "nonjailable." See Ill. Comp. Stat., ch. 720, § 550/4(a) (1998); ch. 730, § 5/5–8–3(3) (possession of less than 2.5 grams of marijuana punishable by up to 30 days in jail); ch. 720, § 600/3.5; ch. 730, § 5/5–8–3(1) (possession of drug paraphernalia punishable by up to one year in jail). In *Welsh,* we noted that, "given that the classification of state crimes differs widely among the States, the penalty that may attach to any particular offense seems to provide the clearest and most consistent indication of the State's interest in arresting individuals suspected of committing that offense." 466 U.S. at 754, n. 14, 104 S.Ct. 2091. The same reasoning applies here, where class C misdemeanors include such widely diverse offenses as drag racing, drinking alcohol in a railroad car or on a railroad platform, bribery by a candidate for public office, and assault. See, e.g., Ill. Comp. Stat., ch. 65, § 5/4–8–2 (1998); ch. 610, § 90/1; ch. 625, § 5/11–504; ch. 720, § 5/12–1.

*McArthur,* 531 U.S. at 336, 121 S.Ct. 946. The Court concluded that "... the need to preserve evidence of a 'jailable' offense was sufficiently urgent or pressing to justify the restriction upon entry that the police imposed." *Id.*

[¶ 30] The unmistakable implication of the discussion in *McArthur* is that the distinction drawn by the Court in *Welsh* between minor offenses that do not justify a warrantless entry into a residence and those offenses that do is predicated upon whether the subject offense carries a potential jail term. Several other courts [4] have concluded that the distinction should be whether an offense is "jailable" or "non-jailable." *See State v. Fees,* 140 Idaho 81, 90 P.3d 306, 312–14 (Idaho 2004); *City of Middletown v. Flinchum,* 95 Ohio St.3d 43, 765 N.E.2d 330, 332 (2002); *State v. Legg,* 633 N.W.2d 763, 773 (Iowa 2001); *State v. Paul,* 548 N.W.2d 260, 267 (Minn.1996); *Stark v. N.Y. State Department of Motor Vehicles,* 104 A.D.2d 194, 483 N.Y.S.2d 824, 826 (Sup.Ct.App.Div. 1984); *Ulysse v. State,* 899 So.2d 1233, 1234 (Fla.App. 3 Dist.2005); *Randolph v. State,* 152 S.W.3d 764, 771–72 (Tex.Crim.App.2004); *Cherry,* 605 S.E.2d at 306–07; and *In re Lavoyne M.,* 221 Cal.App.3d 154, 159, 270 Cal.Rptr. 394 (Cal.Ct.App.1990).

[¶ 31] In this case, the deputies had probable cause to believe that the occupants of the residence were in possession of a controlled substance (marijuana), a misdemeanor. In Wyoming, a first offense for possession of less than three ounces of marijuana is punishable by up to 12 months imprisonment and/or a fine of $1,000.00. Wyo. Stat. Ann. § 35–7–1031(c)(i)(A) (LexisNexis 2005). Under Wyoming law, possession of marijuana is not a minor crime, and the need to preserve evidence of the offense was sufficient to justify the warrantless entry to arrest the occupants of the residence and to secure it until a search warrant or consent could be obtained. Accordingly, we must reject the Defendants' contention that *Welsh*

---

**4.** Some of the cited decisions reached their conclusion after analyzing *McArthur* and *Welsh;* others anticipated *McArthur* and reached their conclusion based on the Court's discussion in *Welsh.*

prohibited the use of exigent circumstances to excuse the warrant requirement here.

## CONCLUSION

[¶ 32] The district court did not err in denying the Defendants' motion to suppress.

The judgment and sentence in each case is affirmed.