2012 WY 39

**Jimmy Dean SMALLFOOT, Appellant (Defendant),**

v.

**The STATE of Wyoming, Appellee (Plaintiff).**

**No. S–11–0192.**

Supreme Court of Wyoming.

March 16, 2012.

Representing Appellant: Diane Lozano, State Public Defender; Tina N. Olson, Appellant Counsel; Wyoming Public Defender Program. Argument by Ms. Olson.

Representing Appellee: Gregory A. Phillips, Wyoming Attorney General; David L. Delicath, Deputy Attorney General; D. Michael Pauling, Senior Assistant Attorney General; Stewart M. Young, Faculty Director, Joshua Beau Taylor, Student Director, and Benjamin J. Sherman, Student Intern, of the Prosecution Assistance Program. Argument by Mr. Taylor.

Before KITE, C.J., and GOLDEN, HILL, VOIGT, and BURKE, JJ.

GOLDEN, Justice.

[¶ 1] Appellant Jimmy Dean Smallfoot entered a conditional guilty plea to a charge of possession with intent to deliver a controlled substance. He reserved the right to appeal the district court's denial of his motion to suppress the marijuana discovered inside his residence. Smallfoot claims the drug evidence should have been suppressed because it was the fruit of a constitutionally infirm warrantless entry into his home. We disagree and affirm the district court's suppression ruling.

## ISSUE

[¶ 2] Smallfoot offers this issue for our consideration:

> Did the trial court err in denying Appellant's motion to suppress evidence obtained in the warrantless search of his residence?

## FACTS [1]

[¶ 3] Around the latter part of July 2010 the Gillette Police Department received information that Elisha Gengozian was selling marijuana from a house located on West Juniper Lane. In the course of their investigation, police observed Gengozian regularly entering and leaving the residence. Police eventually decided to speak with Gengozian regarding the alleged drug activities.

[¶ 4] On August 6, 2010, Detective Derek Weinhardt executed a traffic stop of a vehicle in which Gengozian was a passenger. Shortly thereafter, Lieutenant Brent Wasson[2] and a canine unit arrived at the scene. The canine was directed around the vehicle and alerted to the presence of controlled substances. When Gengozian was removed from the vehicle and frisked, police found marijuana on his person.

[¶ 5] After being advised of his Miranda rights, Gengozian agreed to speak with Detective Weinhardt and Lieutenant Wasson. Gengozian informed the officers that he and his roommate, Kalvin, who both lived at the house on West Juniper Lane, had been selling marijuana to earn money to move to Denver, Colorado. Gengozian stated that he lived at the residence with his stepfather, Smallfoot, and that he had been paying Smallfoot rent from the proceeds of the marijuana sales. Gengozian reported that Smallfoot was fully aware of his drug activities.

[¶ 6] In addition, Gengozian reported that he had additional marijuana, as well as approximately $1,500.00 in proceeds from his drug sales, secreted in the home on West Juniper. He agreed to take the officers there and gave them permission to enter the premises to retrieve the marijuana and proceeds. A consent form to that effect was prepared as the officers and Gengozian arrived at the residence.

[¶ 7] While the officers and Gengozian were approaching the house on foot, Smallfoot exited the residence. Gengozian pointed and yelled at Smallfoot, and Smallfoot reentered the home. Although neither Detective Weinhardt nor Lieutenant Wasson saw Smallfoot at that time, they observed Gengozian pointing and yelling at someone outside the home and learned from Gengozian that the person was Smallfoot.

[¶ 8] Lieutenant Wasson informed Gengozian that, in light of the circumstances, they needed to enter the house immediately, and Gengozian agreed to let them do so. To facilitate that entry, Gengozian opened a door into a large area of the lower level of the residence that appeared to be both a

---

1. We take these facts from the district court's findings, drawing on the record for additional facts as necessary.

2. At the time of this incident, Lieutenant Wasson was the supervisor of the police department's narcotics unit.

living room and a bedroom. Once inside, the officers saw Smallfoot running toward them from an adjacent room carrying several small bags of marijuana. Smallfoot stopped when he saw the officers and dropped the marijuana at the feet of Lieutenant Wasson.

[¶ 9] Thereafter, Gengozian went to a dresser located in the large living room/bedroom, retrieved the money he had earned from his drug sales, and handed it to Lieutenant Wasson. Gengozian then signed the consent form, and the officers searched the room and seized paraphernalia and additional marijuana. After gathering the evidence, the officers left the residence. Neither Smallfoot nor Gengozian were arrested at the time.

[¶ 10] Approximately seven weeks later, on September 29, 2010, the State charged Smallfoot with one count of possession with intent to deliver a controlled substance (marijuana) under Wyo. Stat. Ann. § 35–7–1031(a)(ii) (LexisNexis 2011) (Count I) and conspiracy to deliver a controlled substance (marijuana) in violation of Wyo. Stat. Ann. § 35–7–1042 (LexisNexis 2011) and § 35–7–1031(a)(ii) [3] (Count II). Smallfoot filed a motion to suppress the marijuana evidence seized from his home, claiming it was obtained in violation of his constitutional rights. In particular, Smallfoot claimed Gengozian did not have the authority to consent to the officers' search of his residence and, consequently, the officers' warrantless entry into the home was constitutionally impermissible. After a hearing, the district court denied his motion. The district court concluded the officers lawfully entered the home pursuant to what they believed was valid consent and exigent circumstances, and that, once inside, they discovered the marijuana in plain view. In this latter regard, the district court determined the officers entered into a common area of the home over which Gengozian had authority and that Smallfoot, through his own actions of carrying the marijuana into that common area, placed the marijuana in the plain view of the officers.

[¶ 11] On April 8, 2011, Smallfoot entered a conditional plea of guilty on Count I, reserving the right to appeal the district court's denial of his suppression motion. In exchange for his plea, the State dismissed Count II and agreed to recommend a suspended prison sentence. The district court later sentenced Smallfoot to a term of imprisonment of four to eight years, which it suspended in favor of eight years of supervised probation. This appeal followed.

## STANDARD OF REVIEW

[¶ 12] The standard employed when reviewing a district court's denial of a motion to suppress is well established:

> When reviewing a district court's decision on a motion to suppress evidence, we defer to the court's findings on factual issues unless they are clearly erroneous. *Campbell v. State*, 2004 WY 106, ¶ 9, 97 P.3d 781, 784 (Wyo.2004). We view the evidence in the light most favorable to the district court's decision because it is in the best position to assess the witnesses' credibility, weigh the evidence and make the necessary inferences, deductions and conclusions. *Id.* The constitutionality of a particular search and seizure, however, is a question of law that we review *de novo.* *Id.*

*Garvin v. State*, 2007 WY 190, ¶ 10, 172 P.3d 725, 728 (Wyo.2007) (quoting *Hembree v. State*, 2006 WY 127, ¶ 7, 143 P.3d 905, 907 (Wyo.2006)).

## DISCUSSION

[¶ 13] Smallfoot contends that in denying his motion to suppress, the district court erroneously concluded the officers lawfully entered his home upon valid consent and under exigent circumstances. Before considering the merits of Smallfoot's complaint, we are compelled to address two preliminary matters. First, Smallfoot's argument seeks to have this Court view the evidence in the light most favorable to him. We cannot, and will not, consider the evi-

---

**3.** § 35–7–1031(a) of the Wyoming Controlled Substances Act makes it unlawful for any person to "manufacture, deliver, or possess with intent to manufacture or deliver, a controlled sub- stance" and § 35–7–1042 makes it unlawful to attempt or conspire to commit, among other things, any of these enumerated offenses.

dence in this manner. Second, although Smallfoot challenges the district court's suppression ruling under both Article 1, § 4 of the Wyoming Constitution and the Fourth Amendment to the United States Constitution, he does not provide any legal analysis that the outcome under the Wyoming Constitution would differ from the federal constitution. Smallfoot's state constitutional argument consists of nothing more than a recitation of a passage from *O'Boyle v. State*, 2005 WY 83, 117 P.3d 401 (Wyo. 2005), and an assertion that "the warrantless entry and search of [his] residence was not reasonable under all the circumstances." This Court has consistently declined, as a matter of policy, to consider a state constitutional claim in the absence of a sufficient argument supporting "adequate and independent state grounds." *Cohen v. State*, 2008 WY 78, ¶ 23, 191 P.3d 956, 962 (Wyo. 2008); *Rideout v. State*, 2005 WY 141, ¶ 15, 122 P.3d 201, 205 (Wyo.2005); *Vassar v. State*, 2004 WY 125, ¶ 14, 99 P.3d 987, 993 (Wyo.2004). *See also Cotton v. State*, 2005 WY 115, ¶ 14, 119 P.3d 931, 934 (Wyo.2005). Accordingly, we will confine our analysis of Smallfoot's complaint to federal constitutional principles.

[¶ 14] The Fourth Amendment to the United States Constitution[4] generally prohibits the warrantless entry and search of a person's home. *Illinois v. Rodriguez*, 497 U.S. 177, 181, 110 S.Ct. 2793, 2797, 111 L.Ed.2d 148 (1990). This prohibition, however, does not apply to situations in which consent has been obtained from either the individual whose property is being searched or a person who possesses common authority over the premises. *Id.; see also United States v. Matlock*, 415 U.S. 164, 171, 94 S.Ct. 988, 993, 39 L.Ed.2d 242 (1974). Common authority

> rests ... on mutual use of the property by persons generally having joint access or control for most purposes, so that it is reasonable to recognize that any of the co-inhabitants has the right to permit the inspection in his own right and that the others have assumed the risk that one of

their number might permit the common area to be searched.

*Matlock*, 415 U.S. at 171 n. 7, 94 S.Ct. at 993 n. 7. Even if the person does not in fact have such authority, police officers may rely on his consent if they reasonably, though erroneously, believe that he possesses such authority. *Rodriguez*, 497 U.S. at 186, 110 S.Ct. at 2800.

> As with other factual determinations bearing upon search and seizure, determination of consent to enter must "be judged against an objective standard: would the facts available to the officer at the moment ... 'warrant a man of reasonable caution in the belief'" that the consenting party had authority over the premises? *Terry v. Ohio*, 392 U.S. 1, 21–22, 88 S.Ct. 1868, 1880, 20 L.Ed.2d 889 (1968). If not, then warrantless entry without further inquiry is unlawful unless authority actually exists. But if so, the search is valid.

*Id.* at 188–89, 110 S.Ct. at 2801.

[¶ 15] In the instant case, numerous factors support a reasonable belief by the officers that Gengozian was capable of giving valid consent for them to enter the West Juniper residence. As already noted, Gengozian told the officers that he and his friend, Kalvin, lived at the house with Smallfoot, paid rent to live there, and sold marijuana out of the house. Gengozian also told those officers he was selling the marijuana to earn money to move to Colorado and that he had additional marijuana and the proceeds from his marijuana sales stashed at that house. In addition, Gengozian referred to the residence as his home, and he was observed by police over a period of time regularly leaving and reentering the home. Given these facts, the officers had every reason to believe Gengozian lived at the West Juniper residence and that he possessed a significant degree of dominion and control over the premises.

[¶ 16] We hold the district court correctly determined that the officers' warrantless entry into the West Juniper residence pursuant to Gengozian's consent was constitution-

---

**4.** The Fourth Amendment protects "[t]he right of the people to be secure in their person, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV.

ally permissible.[5] Our holding on this issue obviates the need to determine whether the officers' entry was justified by exigent circumstances. The district court's denial of Smallfoot's motion to suppress is affirmed.

---

**5.** Smallfoot also seemingly contends that, because of his ownership interest in the property and his presence in the residence, the officers were required to obtain his consent and provide him the opportunity to object before entering the residence. Smallfoot cites no legal authority imposing such a duty on the officers. Consequently, we decline to address his contention.