2007 WY 190

**Melissa GARVIN, Appellant (Defendant),**

**v.**

**The STATE of Wyoming, Appellee (Plaintiff).**

**Marc A. Lockwood, Appellant (Defendant),**

**v.**

**The State of Wyoming, Appellee (Plaintiff).**

**Nos. S–07–0101, S–07–0102.**

Supreme Court of Wyoming.

Dec. 6, 2007.

Representing Appellants: R. Michael Vang of Brown & Hiser LLC, Laramie, Wyoming.

Representing Appellee: Patrick J. Crank, Wyoming Attorney General; Terry L. Armitage, Deputy Attorney General; D. Michael Pauling, Senior Assistant Attorney General; James Michael Causey, Assistant Attorney General. Argument by Mr. Causey.

Before VOIGT, C.J., and GOLDEN, HILL, KITE, BURKE, JJ.

GOLDEN, Justice.

[¶ 1] Appellants Melissa Garvin and Marc A. Lockwood entered conditional pleas of guilty to the charge of possession with intent to deliver a controlled substance. They reserved the right to appeal the district court's denial of their respective motion to suppress the marijuana evidence discovered in Garvin's rental vehicle following a traffic stop. In this consolidated appeal, both Garvin and Lockwood claim the evidence should have been suppressed as the fruit of Garvin's unlawful detention under both the United States and Wyoming Constitutions. Finding the detention was proper, we affirm.

## ISSUE

[¶ 2] The sole issue presented for our review is as follows:

Were the Defendants' rights to be free from unreasonable searches and seizures under Article 1 § 4 of the Wyoming Constitution and the Fourth Amendment of the United States Constitution violated that would require suppression of evidence and dismissal of charges?

## FACTS

[¶ 3] The basic facts in this case are not in dispute. On January 19, 2006, at approximately 1:10 p.m., Lockwood and Garvin were traveling eastbound on Interstate 80 in Albany County, en route from Ukiah, California, to Chicago, Illinois. Lockwood was driving his pickup truck, while Garvin followed closely behind in a rented Chevrolet Trailblazer. Wyoming State Trooper Timothy Boumeester observed Garvin following Lockwood's vehicle too closely and stopped her. Lockwood continued on the highway for a short dis-

tance and eventually returned to the location of the stop, parking his truck in front of Garvin's vehicle.

[¶ 4] Trooper Boumeester informed Garvin of the reason for the stop. Garvin explained she was trying to keep up with the pickup, which was being driven by her fiancé. Upon request, Garvin provided her driver's license and a one-way rental agreement, which indicated the vehicle was rented in Santa Rosa, California, and would be returned in Chicago on January 13, 2006. As he spoke with Garvin, Trooper Boumeester observed a large crucifix on the seat next to Garvin, a Bible on the dashboard, an air freshener hanging from the rear-view mirror, and a dryer sheet laying on the floor. He also smelled a strong odor of air fresheners and dryer sheets emanating from inside the vehicle. Trooper Boumeester had Garvin join him in his patrol car while he verified her driver's license and prepared a warning ticket.

[¶ 5] While waiting for dispatch to report on Garvin's driver's license, Trooper Boumeester asked Garvin about her travel plans and the rental vehicle, including the fact the vehicle was past due according to the rental agreement. The trooper noticed Garvin seemed extremely nervous during the questioning, being unable to sit still and constantly moving and wiping the palms of her hands on her pants. Garvin told Trooper Boumeester that she and Lockwood were driving to see Lockwood's sick father in Chicago. Garvin explained that they had left California later than expected, and she had already contacted the rental agency to extend the return date on the vehicle.

[¶ 6] Once dispatch confirmed Garvin had a valid driver's license, Trooper Boumeester issued her a warning ticket for the traffic violation, returned her driver's license and rental agreement, and told her she was free to leave. As Garvin was walking back to her vehicle, Trooper Boumeester inquired if he could ask her a few more questions, and Garvin agreed. The trooper asked Garvin if she had anything illegal in her vehicle, such as marijuana, methamphetamine or cocaine. Garvin's face immediately turned red, and she denied possessing any illegal substance.

Trooper Boumeester noticed Garvin looked away and avoided eye contact with him when questioned about the presence of marijuana, but maintained eye contact when asked about other illegal drugs. The trooper then asked for Garvin's consent to conduct a search of the vehicle. Garvin denied the trooper's request.

[¶ 7] Based upon several factors which led him to believe Garvin was transporting marijuana, Trooper Boumeester informed Garvin that he was requesting a drug dog to do an external sniff of the car, and she was no longer free to leave. When the dog arrived at the scene, it immediately alerted to the presence of drugs in Garvin's vehicle. A search of the vehicle revealed approximately twenty-eight pounds of "high grade" marijuana.

[¶ 8] Garvin and Lockwood were arrested and subsequently charged with three felony drug offenses: (1) possession with intent to deliver a controlled substance in violation of Wyo. Stat. Ann. § 35-7-1031(a)(ii) (LexisNexis 2007); (2) felony possession of a controlled substance in violation of Wyo. Stat. Ann. § 35-7-1031(c)(iii) (LexisNexis 2007); and (3) conspiracy to deliver a controlled substance as proscribed by Wyo. Stat. Ann. §§ 35-7-1031(a)(ii) and 35-7-1042 (LexisNexis 2007). Each filed a motion to suppress the drug evidence, claiming it was the product of Garvin's unlawful detention under both the Fourth Amendment to the United States Constitution and Art. 1, § 4 of the Wyoming Constitution. After a hearing, the district court denied their motions, concluding reasonable suspicion of criminal activity existed to further detain Garvin pending the drug sniff.

[¶ 9] Thereafter, Garvin and Lockwood entered into a plea agreement wherein they conditionally pled guilty to the possession with intent to deliver charge while reserving the right to appeal the district court's suppression ruling. In exchange for the pleas, the State dismissed the remaining charges against them. The district court sentenced Garvin to a term of imprisonment of two to five years, but suspended execution of that sentence in favor of four years supervised probation. The court sentenced Lockwood

to three to six years imprisonment, but ordered the sentence be split, with 180 days to be served in the Albany County Detention Center and the remaining time to be suspended in favor of four years of supervised probation. These appeals followed.

## STANDARD OF REVIEW

[¶ 10] The standard employed for reviewing a district court's suppression ruling is well established:

> When reviewing a district court's decision on a motion to suppress evidence, we defer to the court's findings on factual issues unless they are clearly erroneous. *Campbell v. State*, 2004 WY 106, ¶ 9, 97 P.3d 781, 784 (Wyo.2004). We view the evidence in the light most favorable to the district court's decision because it is in the best position to assess the witnesses' credibility, weigh the evidence and make the necessary inferences, deductions and conclusions. *Id.* The constitutionality of a particular search or seizure, however, is a question of law that we review *de novo*. *Id.*

*Hembree v. State*, 2006 WY 127, ¶ 7, 143 P.3d 905, 907 (Wyo.2006); *see also Custer v. State*, 2006 WY 72, ¶ 9, 135 P.3d 620, 623 (Wyo. 2006); *Gompf v. State*, 2005 WY 112, ¶ 14, 120 P.3d 980, 984–85 (Wyo.2005); *Lindsay v. State*, 2005 WY 34, ¶ 12, 108 P.3d 852, 855 (Wyo.2005).

## DISCUSSION

[¶ 11] In this consolidated appeal, both Garvin and Lockwood contend the district court erred in denying their motions to suppress the marijuana evidence seized during a search of the rental vehicle Garvin was driving. In particular, they argue the district court erred in concluding the observations of Trooper Boumeester constituted reasonable suspicion to detain Garvin pending the arrival of the canine unit. Thus, they claim the marijuana evidence obtained during the search was the product of an unlawful deten-

tion under both the Fourth Amendment to the United States Constitution and Art. 1, § 4 of the Wyoming Constitution and should be suppressed.[1]

[¶ 12] Before considering the merits of this appeal, we must address an initial matter. Despite the phrasing of his issue, Lockwood presents no argument on appeal that he was illegally detained or searched. He does, however, make a cursory argument that, should it be determined Garvin was illegally detained and the evidence therefore excluded, he should receive the same benefit of exclusion. This argument fails. The rights guaranteed by the Fourth Amendment are personal rights. *Rakas v. Illinois*, 439 U.S. 128, 133–34, 99 S.Ct. 421, 425, 58 L.Ed.2d 387 (1978). Only persons whose Fourth Amendment rights have been infringed may claim the benefits of the exclusionary rule. *Simmons v. United States*, 390 U.S. 377, 389, 88 S.Ct. 967, 974, 19 L.Ed.2d 1247 (1968). Since Lockwood's Fourth Amendment rights were never violated, he has no standing to invoke the protections of that rule. Consequently, our further analysis applies only to Garvin.

[¶ 13] The Fourth Amendment protects individuals from unreasonable searches and seizures. U.S. Const. amend IV. A routine traffic stop constitutes a seizure within the meaning of the Fourth Amendment "even though the purpose of the stop is limited and the resulting detention quite brief." *Damato v. State*, 2003 WY 13, ¶ 9, 64 P.3d 700, 704 (Wyo.2003) (quoting *Delaware v. Prouse*, 440 U.S. 648, 653, 99 S.Ct. 1391, 1396, 59 L.Ed.2d 660 (1979)). Because a traffic stop is more analogous to an investigative detention than a custodial arrest, the reasonableness of such stops are analyzed under the two-part test articulated in *Terry v. Ohio*, 392 U.S. 1, 19–20, 88 S.Ct. 1868, 1879, 20 L.Ed.2d 889 (1968):(1) whether the initial stop was justified; and (2) whether the officer's actions during the detention were "reasonably related in scope to the

---

1. Although a violation of both constitutions is asserted, no separate state constitutional analysis is provided concerning the legality of Garvin's detention. Accordingly, we will analyze this complaint solely under federal constitutional principles. *Marinaro v. State*, 2007 WY 123, ¶ 8, 163 P.3d 833, 835 (Wyo.2007); *Campbell v. State*, 2004 WY 106, ¶ 10 n. 2, 97 P.3d 781, 784 n. 2 (Wyo.2004); *Barch v. State*, 2004 WY 79, ¶ 6, 92 P.3d 828, 831 (Wyo.2004).

circumstances that justified the interference in the first instance." *Damato,* ¶ 9, 64 P.3d at 705; *see also Campbell,* ¶ 11, 97 P.3d at 784; *Barch v. State,* 2004 WY 79, ¶ 8, 92 P.3d 828, 832 (Wyo.2004). In this case, Garvin does not challenge the appropriateness of the initial stop. Consequently, our analysis focuses on the second prong of the *Terry* analysis—the reasonableness of the detention.

[¶ 14] During a routine traffic stop, a law enforcement officer may request a driver's license, proof of insurance and vehicle registration, run a computer check, and issue a citation. *Campbell,* ¶ 12, 97 P.3d at 785; *Damato,* ¶ 13, 64 P.3d at 706 (citing *Burgos–Seberos v. State,* 969 P.2d 1131, 1133 (Wyo.1998); *United States v. Elliott,* 107 F.3d 810, 813 (10th Cir.1997)). Generally, the driver must be allowed to proceed on his way without further delay once the officer determines the driver has a valid driver's license and is entitled to operate the vehicle. *Damato,* ¶ 13, 64 P.3d at 706; *see also United States v. Wood,* 106 F.3d 942, 945 (10th Cir.1997); *Barch,* ¶ 9, 92 P.3d at 832. In the absence of consent, an officer may expand the investigative detention beyond the purpose of the initial stop only if there exists an " 'objectively reasonable and articulable suspicion' that criminal activity has occurred or is occurring." *Damato,* ¶ 13, 64 P.3d at 706 (quoting *United States v. Williams,* 271 F.3d 1262, 1267 (10th Cir.2001)). The existence of objectively reasonable suspicion of criminal activity is determined by evaluating the totality of the circumstances. *Damato,* ¶ 16, 64 P.3d at 707. The "whole picture" must be considered, "[c]ommon sense and ordinary human experience are to be employed, and deference is to be accorded a law enforcement officer's ability to distinguish between innocent and suspicious actions." *Id.* (citing *Wood,* 106 F.3d at 946).

[¶ 15] In concluding Trooper Boumeester had reasonable suspicion to detain Garvin, the district court stated:

In this case, Trooper Boumeester, a Wyoming Highway Patrolman with many years of experience in detecting criminal activity, with substantial training specific to drug traffic interdiction on major interstates, articulated several factors that,

when considered in their totality, led him to develop a reasonable suspicion that Defendant was engaged in illegal activity. First, Defendant had a one-way rental agreement, which Highway Patrol, through experience and training, know to be a feature common to drug traffickers. Second, Trooper Boumeester detected a strong odor of air-freshener and dryer sheets, another factor WHP has been alerted to, especially in the case of rental cars which typically do not need strong air fresheners. These items are often used to mask the order [sic] of large amounts of marijuana. Third, Defendant had a large wooden crucifix and Bible in plain view. The open display of religious symbols has been identified by drug interdiction specialists as a sign that the trafficker is attempting to put on an air of piety and innocence, and thereby deflect suspicion. Fourth, Defendant was coming from a town in Northern California, a known area of drug production, and driving to Chicago, Illinois, a known area of drug distribution. Fifth, Defendant was extremely nervous through the entire process, even after she was told she would only be issued a warning. Sixth, Defendant's rental agreement stated the car was to be returned six days prior to the day in question. While none of these factors may be sufficient alone, and perhaps some might seem immaterial to an untrained observer of drug interdiction, when considered in their totality from the point of view of a trained and experienced Highway Patrolman, these factors add up to reasonable suspicion.

[¶ 16] Garvin argues these factors are insufficient to give rise to objectively reasonable suspicion of illegal activity. According to Garvin, each individual factor is innocuous and, because no individual factor supports a finding of reasonable suspicion, a combination of all the factors is likewise insufficient. We disagree with her categorization of the factors as innocuous, but in any event, her argument ignores the fundamental tenet that the entirety of the circumstances must be considered in determining the existence of a Fourth Amendment violation:

The Supreme Court has instructed that we not examine each factor adding up to reasonable suspicion individually, but that we evaluate how convincingly they fit together into a cohesive, convincing picture of illegal conduct. In *[United States v.] Arvizu,* [534 U.S. 266, 122 S.Ct. 744, 151 L.Ed.2d 740 (2002)], the Court rejected what is called a "divide-and-conquer analysis," noting that reasonable suspicion may exist even if "each observation" is "susceptible to an innocent explanation." *Arvizu,* 534 U.S. at 274, 122 S.Ct. 744.

*United States v. Guerrero,* 472 F.3d 784, 787 (10th Cir.2007).

[¶ 17] Looking at the whole picture we agree with the district court's legal conclusion that Trooper Boumeester had reasonable suspicion of criminal activity to detain Garvin until the arrival of the canine unit. In addition to the factors articulated by the district court, our review of the record indicates Trooper Boumeester had been involved in two previous traffic stops of individuals from Ukiah, California, during which he discovered large quantities of marijuana. Thus, rather than dealing with generalities of a known drug source region, Trooper Boumeester was presented with a specific small town known to him as a source point for marijuana. Further, during the discussion with Trooper Boumeester outside the patrol car following the issuance of the warning ticket, when asked about the presence of controlled substances, Garvin's face immediately flushed. Garvin was evasive and looked away from Trooper Boumeester when answering questions about marijuana, but maintained eye contact when questioned about other controlled substances. We believe the aggregate of all the information available to Trooper Boumeester created reasonable suspicion that criminal activity was afoot, thus warranting Garvin's further detention.

[¶ 18] Affirmed.