2018 WY 14

**James Bryant HARRIS, Jr.,
Appellant (Defendant),**

v.

**The STATE of Wyoming,
Appellee (Plaintiff).**

S-17-0135

Supreme Court of Wyoming.

February 7, 2018

Representing Appellant: Thomas A. Fleener of Fleener Law, PC, Laramie, WY.

Representing Appellee: Peter K. Michael, Wyoming Attorney General; David L. Delicath, Deputy Attorney General; Christyne M. Martens, Senior Assistant Attorney General; Darrell D. Jackson, Faculty Director, Prosecution Assistance Program; Saige N. Smith, Student Director; and Becky Farley, Student Intern. Argument by Ms. Farley.

Before BURKE, C.J., and HILL, DAVIS, FOX, and KAUTZ, JJ.

HILL, Justice.

[¶1] James Bryant Harris, Jr., argues that the trial court erred in denying his motion to suppress evidence obtained as a result of a detention and subsequent search of his vehicle. We affirm.

## ISSUE

[¶2] Mr. Harris submits his single issue on appeal:

Did the trial court err in denying Appellant's Motion to Suppress Evidence obtained as a result of his illegal detention and subsequent search of his vehicle?

## FACTS

[¶3] On May 5, 2016, in the early afternoon, Trooper Aaron Kirlin initiated a vehicle stop on Interstate 80 for speeding. Two people occupied the vehicle—James Harris and his wife, Katelyn. The trooper requested Mr. Harris's license, registration, and proof of insurance, and told Mr. Harris he would only be warned for speeding. The information checked out, except for the insurance card's expiration date.

[¶4] After some discussion about the insurance, Trooper Kirlin asked Mr. Harris to come back to the patrol car while he verified the remaining documentation. While in the patrol car, Trooper Kirlin inquired about the Harris's travel plans. Mr. Harris was unclear about when exactly they left Salt Lake City, Utah, or when they left Florida, and requested the trooper to ask his wife. Mr. Harris also said it had taken two days to drive from Salt Lake City, and that they intended to travel to Florida in the same amount of time, which the trooper found odd.

[¶5] During the hearing on Mr. Harris's motion, Trooper Kirlin testified that throughout the encounter, Mr. Harris was nervous, as evidenced by a rocking leg, fidgeting with his pants pockets, and excessive talking. The trooper testified that he tried to set Harris at ease by asking about things like fishing, but when returning to the subject of travel plans, his nervousness returned. The trooper also testified that when he asked Harris about medical conditions, he responded that he had an anxiety disorder.

[¶6] Trooper Kirlin testified that he then went back to the Harris's car to speak with Mrs. Harris. She reported she was having trouble finding the updated insurance information, and when asked about travel plans, she stated they were traveling from Eugene, Oregon. She stated they were driving straight through to Florida, but did make a couple stops in various towns, but did not remember which ones, except for Salt Lake City. The trooper retuned to the patrol car and asked Mr. Harris if he had ever been arrested. The trooper testified that early on in his contact with Mr. Harris, dispatch informed him that his car had been stopped three months earlier near Rock Springs, Wyoming, and that had resulted in the seizure of a small amount of marijuana and the issuance of a citation. In response to the trooper's question about ever having been arrested, Mr. Harris said no, but then "kind of argued his case that he'd never been arrested."

[¶7] Trooper Kirlin once again returned to the Harris vehicle. Mrs. Harris had found the insurance information, and the trooper confronted her with the discrepancies in the two stories. She explained away the differences by stating that Mr. Harris had been living in Oregon for a year and a half, and that she did not know what he was doing there—maybe fishing, but that they had been separated for over six years.

[¶8] When the trooper compared the two stories, Mr. Harris explained to the trooper that during the first part of the stop, he panicked and accidentally told him details of a previous trip. Trooper Kirlin then advised the couple of their detention and also of their Miranda rights. He also deployed his K-9, Frosty, who alerted to the presence of a controlled substance in two spots of the vehicle. A subsequent search revealed THC "Vape" Capsules and 16.27 pounds of marijuana. The trooper arrested Harris for one count of possession of a controlled substance and one count of a controlled substance with intent to deliver.

[¶9] Harris pleaded not guilty to both charges, and on September 7, 2016, filed a motion to suppress evidence based on the roadside search of his car. During the hearing on his motion, Harris argued that under the totality of the circumstances, Trooper Kirlin did not have reasonable suspicion of illegal activity unrelated to the reason of the initial traffic stop that justified an extension of the scope of the stop. He argued that the detention was unconstitutional because the trooper lacked reasonable suspicion as Harris and his wife had corrected the discrepancies in their travel plans, and even if the Trooper developed reasonable suspicion, he developed it after Harris's wife obtained the updated insurance information. Harris also questioned whether the drug dog alerted or not, and stated that he would "let" the tape speak for itself.'

[¶10] In contrast, the State argued that the trooper developed reasonable suspicion based upon travel plan discrepancies and oddities, Mr. Harris's nervousness, and not admitting his criminal history. The trooper also explained the delay in the traffic stop because Harris was unable to provide an up to date proof of insurance until late in the stop. Trooper Kirlin testified during the hearing about the myriad facts that led him to be suspicious of ongoing criminal activity. He mentioned the discrepancies of their travel plans, Mr. Harris's nervousness, and his dishonesty about his previous criminal record.

[¶11] The district court denied Mr. Harris's motion to suppress. The court concluded:

> ... under the totality of the circumstances, Trooper Kirlin had reasonable, articulable facts to justify detaining Mr. Harris and Mrs. Harris and to justify further inquiry. Also under this set of circumstances, including Mrs. Harris's responses to his questions regarding the presence of controlled substances in the vehicle, Trooper Kirlin then had reasonable suspicion to expand the scope of the stop so as to deploy his K-9, Frosty, for an exterior sniff of the vehicle." (footnote and citations omitted).

[¶12] After the district court denied Mr. Harris's motion to suppress, the State and Mr. Harris entered into a plea agreement, wherein Mr. Harris could plead guilty to the count of possession of a controlled substance, conditioned on his right to appeal the district court's denial of his motion to suppress. The court sentenced him to three to five years, suspended in favor of three years' probation. This appeal followed.

## STANDARD OF REVIEW

■■■ [¶13] When reviewing the denial of a motion to suppress, we view the evidence in the light most favorable to the district court and defer to its factual findings unless they are clearly erroneous. We review *de novo* the ultimate determination regarding the constitutionality of a particular search or seizure. *Wallace v. State*, 2009 WY 152, ¶ 8, 221 P.3d 967, 969 (Wyo. 2009); *Garvin v. State*, 2007 WY 190, ¶ 10, 172 P.3d 725, 728 (Wyo. 2007).

## DISCUSSION

[¶14] Harris argues on appeal that the scope of the originally lawful stop was impermissibly extended. Though he does not contest the validity of the initial stop, or even

whether the trooper had probable cause to search his vehicle, Mr. Harris contends that the scope of the stop was impermissibly extended to allow the trooper to develop probable cause. In response, the State argues that under a totality of circumstances, the record supports the district court's finding that Trooper Kirlin developed reasonable suspicion early on in the encounter, and thus the scope of the stop was not improperly exceeded.

 [¶15] The Fourth Amendment protects individuals from unreasonable searches and seizures. *U.S. Const. amend. IV.* A routine traffic stop constitutes a seizure within the meaning of the Fourth Amendment "even though the purpose of the stop is limited and the resulting detention quite brief." *Damato v. State*, 2003 WY 13, ¶ 9, 64 P.3d 700, 704 (Wyo. 2003) (quoting *Delaware v. Prouse*, 440 U.S. 648, 653, 99 S.Ct. 1391, 1396, 59 L.Ed.2d 660 (1979)). There are three levels of interaction between police officers and citizens:

> The least intrusive contact between a citizen and police is a consensual encounter. *Custer*, ¶ 13, 135 P.3d at 624-25. A consensual encounter is not a seizure and does not implicate Fourth Amendment protections. The second tier is the investigatory or Terry stop, named after the seminal case *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed. 2d 889 (1968). An investigatory detention is a seizure under the Fourth Amendment. *Custer*, ¶ 13, 135 P.3d at 624-25. However, because of its limited nature, a law enforcement officer is only required to show "the presence of specific and articulable facts and rational inferences which give rise to a reasonable suspicion that a person has committed or may be committing a crime" in order to justify the detention. *Id.*, quoting *Wilson v. State*, 874 P.2d 215, 220 (Wyo. 1994). The most intrusive encounter between police and a citizen is an arrest. An arrest " 'requires justification by probable cause to believe that a person has committed or is committing a crime.' " *Id.* at 625, quoting *Wilson*, 874 P.2d at 219-20.

*Flood v. State*, 2007 WY 167, ¶ 14, 169 P.3d 538, 543-544 (Wyo. 2007).

 [¶16] This case involves an investigatory detention, otherwise known as a Terry Stop. A Terry Stop is limited in nature, and therefore, officers are justified in detaining an individual only if they have reasonable suspicion. *Flood*, ¶ 14, 169 P.3d at 544. The reasonableness of a traffic stop is determined by applying a two-part analysis: (1) whether the initial stop was justified; and (2) whether the officer's actions during the detention were "reasonably related in scope to the circumstances that justified the interference in the first instance." *Garvin*, ¶ 13, 172 P.3d at 728-29 (citing *Terry v. Ohio*, 392 U.S. 1, 19-20, 88 S.Ct. 1868, 1879, 20 L.Ed.2d 889 (1968)); *see also Wallace*, ¶ 12, 221 P.3d at 970; *Damato*, ¶ 9, 64 P.3d at 705. Here, we are only concerned with the second part of the analysis because Mr. Harris concedes that the initial stop was justified.

[¶17] With respect to the second prong of the analysis, this Court has stated:

> During a routine traffic stop, a law enforcement officer may request a driver's license, proof of insurance and vehicle registration, run a computer check, and issue a citation. Generally, the driver must be allowed to proceed on his way without further delay once the officer determines the driver has a valid driver's license and is entitled to operate the vehicle. In the absence of consent, an officer may expand the investigative detention beyond the purpose of the initial stop only if there exists an " 'objectively reasonable and articulable suspicion' that criminal activity has occurred or is occurring."

*Garvin*, ¶ 14, 172 P.3d at 729 (internal citations and quotation marks omitted). We have never imposed an arbitrary time limit when determining the permissible length of a traffic stop. *Lindsay v. State*, 2005 WY 34, ¶ 19, 108 P.3d 852, 857 (Wyo. 2005). Instead, we examine whether law enforcement "diligently pursued a means of investigation that was likely to confirm or dispel their suspicions quickly and without undue delay in detaining a defendant." *Id.*

[¶18] Mr. Harris's first area of concern is that it was unreasonable for the Trooper to verify his insurance information because it

was, in fact, valid. Although the card was facially valid, Trooper Kirlin testified that he did not believe that he had been provided with a valid proof of insurance until the end of the stop when Mr. Harris's wife provided updated information. We have said before that "[t]o be reasonable is not to be perfect, and so the Fourth Amendment allows for some mistakes on the part of government officials, giving them 'fair leeway for enforcing the law in the community's protection.'" *Allgier v. State*, 2015 WY 137, ¶ 14, 358 P.3d 1271, 1276 (Wyo. 2015) (citing *Heien v. North Carolina*, — U.S. —, 135 S.Ct. 530, 536, 190 L.Ed.2d 475 (2014)). The mistake of fact must be "objectively reasonable." *Heien* at 539. While the district court did not make any specific findings regarding the objective reasonableness of the mistake of fact, it did state that it had "no reason to doubt the delay attributed to Trooper Kirlin's continued attempts to ensure a valid proof of insurance for Mr. Harris's vehicle." After our review of the record, nor do we.

[¶19] Mr. Harris next argues generally that the trooper's actions were not reasonably related in scope to the initial reason for stopping Mr. Harris's vehicle (speeding). Contrary to Mr. Harris's assertion, Trooper Kirlin did not need reasonable suspicion at the time he told Mr. Harris he would be issued a warning for speeding. (*See United States v. Kitchell*, 653 F.3d 1206, 1206 (10th Cir. 2011)). All in all, the duration of the stop in this case was twenty-eight minutes, the cause of which was mostly due to the couple's inability to provide proof of valid insurance. *Kitchell* states that law enforcement officers, as part of a traffic stop, may request registration, proof of insurance and driver's license, run computer checks and issue warnings and citations. *Id.*, 653 F.3d at 1217; e.g., *Campbell v. State*, 2004 WY 106, ¶ 12, 97 P.3d 781, 784-85 (Wyo. 2004); *see also Garvin*, ¶ 14, 172 P.3d at 729. When a seizure is justified simply on the basis of issuing a warning ticket the seizure "can become unlawful if it is prolonged beyond the time reasonably required to **complete** that mission." *Kitchell*, 653 F.3d at 1217 (emphasis added). Here, the officer testified that he believed the insurance to be invalid, thus the twenty-eight minute stop to assess its validity.

[¶20] During those twenty-eight minutes, the trooper discussed travel with Mr. and Mrs. Harris, Mr. Harris accompanied Trooper Kirlin to his patrol car while he completed his paperwork to issue a warning for speeding. Meanwhile, Mrs. Harris tried to retrieve the updated insurance information. The trooper's conduct during this delay was reasonably related in scope to a speeding violation in that he mostly spoke to both Harris's about their travel plans. Among other things, reasonable suspicion can be established by "inconsistencies in the descriptions of travel plans given by the occupants of a vehicle stopped for a traffic violation." *Flood*, ¶ 30, 169 P.3d at 547.

[¶21] At the outset of their discussion, Mr. Harris gave confusing and strange responses when asked about the couple's travel plans. The versions of the Harris's travel plans were different, depending upon who Trooper Kirlin asked. In fact, Mr. Harris could not give definitive answers to the first four travel-related questions asked of him, including when the couple left Florida. Coupled with Trooper Kirlin's observation of Mr. Harris's nervousness, we are able to conclude that the detention lasted no longer than necessary to effectuate the stop. Not only that, but more importantly that Trooper Kirlin had reasonable, articulable facts to justify detaining Mr. and Mrs. Harris. Reasonable suspicion existed enough to also justify the eventual deployment of Trooper Kirlin's K-9, Frosty, to sniff the vehicle's exterior. *See Damato*, 64 P.3d 700.

[¶22] Affirmed.