# IN THE SUPREME COURT, STATE OF WYOMING

## 2020 WY 14

OCTOBER TERM, A.D. 2019

February 4, 2020

JAMES LEONARD MILLS,

Appellant
(Defendant),

v.

S-19-0125

THE STATE OF WYOMING,

Appellee
(Plaintiff).

*Appeal from the District Court of Campbell County*
*The Honorable Michael N. Deegan, Judge*

*Representing Appellant:*

Office of the State Public Defender: Diane Lozano, State Public Defender; Kirk A. Morgan, Chief Appellate Counsel; Desiree Wilson, Senior Assistant Appellate Counsel. Argument by Ms. Wilson.

*Representing Appellee:*

Bridget Hill, Wyoming Attorney General; Jenny L. Craig, Deputy Attorney General; Joshua C. Eames, Senior Assistant Attorney General. Argument by Mr. Eames.

*Before DAVIS, C.J., and FOX, KAUTZ, BOOMGAARDEN, and GRAY, JJ.*

**NOTICE: This opinion is subject to formal revision before publication in Pacific Reporter Third. Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of any typographical or other formal errors so that correction may be made before final publication in the permanent volume.**

**DAVIS**, Chief Justice.

[¶1]    James Mills' trial counsel filed a motion to suppress evidence which challenged only the initial basis for a traffic stop that ultimately led to the discovery of drugs and drug paraphernalia in Mr. Mills' vehicle.  The district court concluded that a traffic violation justified the initial stop, and it denied the motion.  Mr. Mills proceeded to trial, and a jury found him guilty of two felonies and one misdemeanor.  On appeal, Mr. Mills argues that admitting evidence seized during the traffic stop was plain error because it was seized in violation of the Fourth Amendment to the United States Constitution.  Alternatively, he argues he received ineffective assistance of counsel by his trial counsel's failure to challenge the duration of the traffic stop in his motion to suppress evidence.  We conclude that Mr. Mills received ineffective assistance of counsel, and we therefore reverse and remand.

### ISSUES

[¶2]    We address the following issues:[1]

> 1.    Does W.R.Cr.P. 12 preclude plain error review of issues not raised in Mr. Mills' motion to suppress evidence?
>
> 2.    Did Mr. Mills receive ineffective assistance of counsel due to his attorney's failure to challenge the duration of his traffic stop in a motion to suppress evidence?

### FACTS

[¶3]    While patrolling on July 10, 2017, Deputy Kyle Borgialli received a communication from DCI agents, who indicated that they had witnessed a possible drug transaction, described the two vehicles involved, and requested that he "find legal cause to stop and speak with those vehicles."  Shortly thereafter, Deputy Borgialli saw two vehicles matching their descriptions turn left onto a four-lane road.  One vehicle turned into the inside lane nearest the road's center line, while the other took a wider turn into the outside lane of the road.  Deputy Borgialli initiated a traffic stop of the vehicle that had taken the wider turn.[2]

---

[1] Mr. Mills also argues the State elicited improper testimony from two witnesses at trial.  Because we reverse on his ineffective assistance of counsel claim, we need not address that issue.

[2] The turn violated Wyo. Stat. Ann. § 31-5-214(a)(ii) (LexisNexis 2019), which states:

> Left turns: The driver of a vehicle intending to turn left shall approach the turn in the extreme left-hand lane lawfully available to traffic moving in the direction of travel of the vehicle.  Whenever practicable the left turn shall be made to the left of the center of the intersection and so as to leave the intersection or other location in the extreme left-hand lane lawfully

[¶4]    Deputy Borgialli approached the vehicle's driver, Mr. Mills, told him the reason for the stop, and requested Mr. Mills' license, registration, and proof of insurance. While Mr. Mills gathered his documents Deputy Borgialli repeatedly asked him whether he had "weapons," "anything illegal," or "illegal narcotics" on his person or in the vehicle. After repeatedly indicating that he did not have anything illegal in the vehicle, Mr. Mills became frustrated and answered "No" in an elevated tone of voice.[3]

[¶5]    Deputy Borgialli took Mr. Mills' documents back to his patrol car, called in Mr. Mills' license number to his dispatcher, and filled out a warning citation. As he was returning to Mr. Mills' vehicle, another officer at the scene told him that he had observed Mr. Mills put a brown paper sack under his seat.[4] When he approached Mr. Mills, Deputy Borgialli informed him that one of the documents he had provided was a price quote, not "actual proof of insurance," and he again requested proof of insurance. Mr. Mills immediately provided his proof of insurance, which Deputy Borgialli quickly examined and returned to Mr. Mills. Deputy Borgialli held onto Mr. Mills' other documents and the completed warning citation, and asked Mr. Mills to step out of the vehicle so that he could "explain" the citation to him. Mr. Mills refused to exit the vehicle, saying Deputy Borgialli could "explain it right here" and that he needed to get home.

[¶6]    Officer Steven Dillard arrived on scene with a drug-sniffing dog while Mr. Mills was refusing to exit his vehicle. Deputy Borgialli summoned Officer Dillard to Mr. Mills' vehicle. Officer Dillard came over, leaving his canine on the sidewalk near a patrol car, and Deputy Borgialli told him Mr. Mills would not "get out of the vehicle for the canine." The two officers attempted to persuade Mr. Mills to exit the vehicle, but Mr. Mills continued to refuse. Eventually, several officers forcibly removed Mr. Mills from his vehicle and placed him under arrest for interference with a peace officer due to refusal to obey the request to exit the vehicle. Wyo. Stat. Ann. § 6-5-204(a) (LexisNexis 2019). Officers conducted a search incident to arrest and found two packages of methamphetamine and one package of cocaine in one of his pockets. After Mr. Mills was removed from the vehicle, Officer Dillard ran his canine around it, and the dog alerted. A search of the vehicle uncovered four glass methamphetamine pipes, jeweler's baggies, two digital scales, and $3,600 cash.

[¶7]    The State charged Mr. Mills with two felony counts of possession with intent to deliver a controlled substance (cocaine and methamphetamine), and with one misdemeanor count of interference with a peace officer. Mr. Mills' trial counsel filed a motion to

---

available to traffic moving in the same direction as the vehicle on the roadway being entered[.]"

[3] Mr. Mills did not respond to Deputy's Borgialli's first question asking whether he had "anything illegal in the vehicle." At the time, Mr. Mills was reaching over into his passenger side glove compartment. It is impossible to tell from Deputy Borgialli's body cam footage whether Mr. Mills heard this question.

[4] A subsequent search of the vehicle uncovered brown napkins under Mr. Mills' seat, but no paper sack.

suppress evidence. The entirety of the motion's legal argument consisted of citation to the United States and Wyoming Constitutions and the following two sentences:

> The Wyoming Supreme Court has ruled that "a traffic stop initiated by a law enforcement officer after personally observing a traffic violation is supported by probable cause [reasonable suspicion] and does not violate Article 1, Section 4 of the Wyoming Constitution." *Fertig v. State*, 2006 WY 148, ¶ 28, 146 P.3d 492, 501 (Wyo. 2006). Deputy Borgialli did not see a traffic violation by this Defendant and therefore the initial stop was not supported by reasonable suspicion.

(alteration in original). At the hearing on the motion, Mr. Mills' counsel argued only "that there did not exist reasonable suspicion or probable cause to believe that Mr. Mills had committed a traffic offense justifying the initial stop." Because "the only issue in front of the Court [was] the basis for the stop" the State did not "address any other issues."

[¶8]   The State introduced testimony from Deputy Borgialli that he had not captured Mr. Mills' traffic violation on his patrol car's dash cam because of the position of his car, but that he had personally observed it. On cross examination, Mr. Mills' defense counsel similarly limited his inquiry to the initial basis for the stop. In closing, Mr. Mills' counsel argued that "the issue [came] down to whether or not a traffic violation occurred at the intersection," pointing out that "the officer does not have any physical or camera footage of the traffic violation."

[¶9]   The district court denied the motion, concluding that Deputy Borgialli's testimony was "highly credible" and that Borgialli had "personally observed [Mr. Mills] commit a traffic violation" justifying the stop. Because Mr. Mills did "not challenge[] the scope, duration or intensity of the stop" the court did not address those issues.

[¶10] Mr. Mills proceeded to trial, and the State introduced testimony from Deputy Borgialli, Officer Dillard, and a forensic analyst with the Wyoming State Crime Laboratory. Deputy Borgialli testified about the circumstances of the traffic stop, his interactions with Mr. Mills, and evidence found during the search of Mr. Mills and his vehicle. Officer Dillard testified similarly.

[¶11] Finally, the forensic analyst testified about the types and weights of the narcotics found in Mr. Mills' pocket. The State also introduced multiple photographs of the evidence discovered in Mr. Mills' pocket and vehicle and three plastic bags containing the narcotics.

[¶12] The jury convicted Mr. Mills of all three counts. The court sentenced him to concurrent sentences of six to eight years on each of the felony counts, and to 128 days for the misdemeanor count, with credit for time served. Mr. Mills timely appealed.

## DISCUSSION

**I.     *W.R.Cr.P. 12 precludes plain error review of issues not raised in Mr. Mills'* motion to suppress evidence.**

**A.     Standard of Review**

[¶13]   "While the question of waiver is often one of fact, when the facts and circumstances relating to the subject are admitted or clearly established, waiver becomes a question of law which we consider *de novo*." *Rodriguez v. State*, 2019 WY 25, ¶ 16, 435 P.3d 399, 403 (Wyo. 2019) (quoting *Verheydt v. Verheydt*, 2013 WY 25, ¶ 21, 295 P.3d 1245, 1250 (Wyo. 2013)).  Here, the record is clear, and the facts giving rise to waiver are undisputed; thus, our review is de novo.

**B.     W.R.Cr.P. 12(b) Waiver and *Rodriguez***

[¶14]   We recently held in *Rodriguez* "that the failure to assert an objection or defense through a Rule 12(b)-required pretrial motion is a bar to appellate review of the claim unless good cause is shown for the failure to make the required filing." *Rodriguez*, ¶ 31, 435 P.3d at 408.  Mr. Mills argues that we should review issues not raised in his motion to suppress evidence for plain error, asserting that *Rodriquez's* "new procedural rule of waiver" does not apply retroactively.  We do not agree that *Rodriguez* created a "new procedural rule of waiver," and conclude that W.R.Cr.P. 12(b) bars appellate review of issues not raised in Mr. Mills' motion to suppress evidence.

[¶15] Generally, statutes operate only prospectively, while judicial decisions apply retroactively and prospectively. *United States v. Security Indus Bank*, 459 U.S. 70, 79, 103 S. Ct. 407, 413, 74 L.Ed.2d 235 (1982).  Under certain circumstances, however, judicial decisions are only given prospective effect. *See, e.g., Best v. Best*, 2015 WY 133, ¶ 34, 357 P.3d 1149, 1157 (Wyo. 2015) (applying holding prospectively only).  For a decision to warrant only prospective application, the decision "must establish a new principle of law, either by overruling clear past precedent on which litigants may have relied, or by deciding an issue of first impression whose resolution was not clearly foreshadowed." *Id.* ¶ 30, 357 P.3d at 1156 (quoting *Chevron Oil Co. v. Huson*, 404 U.S. 97, 106, 92 S. Ct. 349, 355, 30 L.Ed.2d 296 (1971)).[5]

---

[5] *Chevron* provides a factor test for determining whether a decision should apply prospectively only. *Best*, ¶ 30, 357 P.3d at 1156.  Both parties rely on that test in analyzing whether *Rodriguez* applies to Mr. Mills' case.  We note that since *Chevron* the United States Supreme Court's approach to retroactivity questions has evolved significantly, calling into question the continued viability of the *Chevron* test when deciding whether interpretations of federal law apply retroactively. *In re Mersmann*, 505 F.3d 1033, 1051-52 (10th Cir. 2007) ("Since *Chevron*, the Court's standard has evolved in many ways, leaving in its wake a confusing path for courts to navigate.  What we take from these cases is: '[T]he analysis of *Chevron* is only relevant,

[¶16]   *Rodriguez* is not such a case.  Wyoming Rule of Criminal Procedure 12(b) has long required motions to suppress evidence to "be raised prior to trial."  *See* Order Adopting the Revised Wyoming Rules of Criminal Procedure at 44, Oct. Term A.D. 1991, available at https://www.courts.state.wy.us/wp-content/uploads/2017/05/crimpro_1991122300.pdf (last visited Jan. 29, 2020).  Likewise, Rule 12(g) has long stated that "[f]ailure by a party to raise defenses or objections or to make requests which must be made prior to trial . . . shall constitute waiver thereof, but the court for cause shown may grant relief from the waiver."  *See id.* at 46.  *Rodriguez* merely applied the longstanding rule that "failure to file a W.R.Cr.P. 12(b)(3)-required motion bars appellate review of such claims, including suppression questions," absent a showing of good cause.  *Rodriguez,* ¶ 37, 435 P.3d at 410.

[¶17]   *Rodriguez* acknowledged that we had "routinely applied a Rule 52 plain error analysis" to cases "where a defendant [had] not filed a motion to suppress evidence . . . or offered a different argument in support of the motion on appeal[.]"  *Id.* ¶ 28, 435 P.3d at 407.  However, we had never "addressed the propriety of that review under Rule 12 nor intimated that a different standard of review had been argued."  *Id.*  Indeed, in the only two cases in which waiver was urged, without answering the question, we "suggest[ed] that an interpretation of Rule 12(g) as a bar to appellate review was well founded."  *Id.* (citing *Hadden v. State*, 2002 WY 41, ¶ 20, 42 P.3d 495, 501 (Wyo. 2002) ("we do not intend by the rendering of this opinion to establish that such a late motion cannot have the effect of waiving such an issue, even one of constitutional dimensions"); *Dickeson v. State*, 843 P.2d 606, 610-11 (Wyo. 1992) ("We need not decide [] whether waiver flows from failure to file the motion as required by the rule.  The language of this rule is persuasive and, under Wyo. R. Crim. P. 41(g) and 12(g), effective March 24, 1992, the State's argument of waiver would be even more persuasive.").

---

if it maintains any relevance at all, in determining whether a new federal rule should apply retroactively across the board.  No longer may *Chevron* be used to make individual retroactivity determinations on a case by case equitable basis.'") (citing *Griffith v. Kentucky*, 479 U.S. 314, 322 n.8, 107 S.Ct. 708, 93 L.Ed.2d 649 (1987); *American Trucking Ass'ns., Inc. v. Smith,* 496 U.S. 167, 110 S.Ct. 2323, 110 L.Ed.2d 148 (1990); *James B. Beam Distilling Co. v. Georgia,* 501 U.S. 529, 111 S.Ct. 2439, 115 L.Ed.2d 481 (1991); *Harper v. Virginia Dep't of Taxation,* 509 U.S. 86, 113 S.Ct. 2510, 125 L.Ed.2d 74 (1993); *Reynoldsville Casket Co. v. Hyde,* 514 U.S. 749, 115 S.Ct. 1745, 131 L.Ed.2d 820 (1995)).  Despite this evolution, several state courts have chosen to retain the *Chevron* test for retroactivity questions concerning matters of state law.  *See, e.g. Martin Marietta Corp. v. Lorenz*, 823 P.2d 100, 112 n.7 (Colo. 1992) (en banc) ("Because we deal in this case with the issue of retroactive application of a state judicial decision announcing a rule of tort law and not a rule deriving from federal constitutional or statutory law, we continue to adhere to the *Chevron* analysis in resolving the issue of retroactive or prospective application of the state judicial decision.").  *Best* did not explicitly address whether we declined to follow the United States Supreme Court's shift away from *Chevron* on state law grounds.  *See generally*, *Best*, ¶ 30, 357 P.3d at 1156.  However, we need not decide that issue because "the question of retroactivity arises only when a decision establishes a new rule of law."  *Martin Marietta Corp.*, 823 P.2d at 113.  Because *Rodriguez* did not establish a new rule of law, we leave that question for another day.

5

[¶18]   Because we never announced that plain error review governed unraised suppression issues, and the only two cases discussing the issue suggested otherwise, we cannot agree that *Rodriguez* "overruled clear past precedent."  Nor do we believe our cases applying plain error review established "precedent on which litigants may have relied"—we find it improbable that trial counsel would consciously decide not to seek suppression in anticipation that plain error review would be available on appeal.[6]  Finally, we note that we have adhered to our clarification of Rule 12's applicability in other cases pending at the time we decided *Rodriguez.  See, e.g., Bittleston v. State*, 2019 WY 64, ¶¶ 36-37, 442 P.3d 1287, 1296 (Wyo. 2019); *Mathewson v. State*, 2019 WY 36, ¶ 41, 438 P.3d 189, 205-06 (Wyo. 2019).  We see no compelling reason to treat these similarly-situated defendants differently.  *See James B. Beam Distilling Co. v. Georgia*, 501 U.S. 529, 543, 111 S.Ct. 2439, 2447-48, 115 L.Ed.2d 481 (1991) ("Once retroactive application is chosen for any assertedly new rule, it is chosen for all others who might seek its prospective application. The applicability of rules of law is not to be switched on and off according to individual hardship . . . .").  Thus, we hold that W.R.Cr.P. 12 precludes plain error review of issues not raised in Mr. Mills' motion to suppress evidence.

## II.     *Mr. Mills received ineffective assistance of counsel due to his trial counsel's failure to challenge the duration of the traffic stop in the motion to suppress evidence.*

### A.     Standard of Review

[¶19]   Ineffective assistance of counsel claims present mixed questions of law and fact that we review de novo. *Bittleston*, ¶ 31, 442 P.3d at 1295 (citing *Dixon v. State*, 2019 WY 37, ¶ 56, 438 P.3d 216, 236 (Wyo. 2019)).  "To prevail on an ineffective assistance claim, a defendant must show that his trial counsel rendered constitutionally deficient performance and that absent that deficiency, a reasonable probability exists that he would have enjoyed a more favorable verdict." *Bittleston*, ¶ 31, 442 P.3d at 1295. (quoting *Wall v. State*, 2019 WY 2, ¶ 39, 432 P.3d 516, 527 (Wyo. 2019)).  "We 'invoke[] a strong presumption that counsel rendered adequate assistance and made all significant decisions in the exercise of reasonable judgment.'" *Winters v. State*, 2019 WY 76, ¶ 12, 446 P.3d 191, 199 (Wyo. 2019) (alteration in original) (quoting *Schreibvogel v. State*, 2010 WY 45, ¶ 47, 228 P.3d 874, 889 (Wyo. 2010)).

[¶20]   Failure to raise an issue in a motion to suppress evidence "does not constitute ineffective assistance of counsel *per se*.  Instead, the reasonableness of counsel's failure must be evaluated from the perspective of counsel at the time of the alleged error and in light of all the circumstances." *Dickeson*, 843 P.2d at 610 (citations omitted).  When a claim of ineffectiveness rests on counsel's failure to raise an issue in a motion to suppress

---

[6] This is particularly true when defense counsel did move to suppress, but did not challenge the duration of the stop.

evidence, "prejudice will result where, in the absence of that evidence, 'only a limited amount of evidence was available to the prosecution to support a conviction.'" *Lancaster v. State*, 2002 WY 45, ¶ 59, 43 P.3d 80, 102 (Wyo. 2002) (quoting *Dickeson*, 843 P.2d at 612), *overruled on other grounds by Jones v. State*, 2019 WY 45, ¶ 25, 439 P.3d 753, 761-62 (Wyo. 2019).

## B.     Ineffective Assistance of Counsel

[¶21]   Mr. Mills argues his counsel was ineffective for failing to raise what he claims was law enforcement's unreasonable extension of the traffic stop.  Specifically, he asserts that his counsel rendered constitutionally deficient performance by failing to argue that Deputy Borgialli "impermissibly detained Mr. Mills without reasonable suspicion after the purpose of the traffic stop had been completed and the warning citation was complete."[7]  He asserts that this error was prejudicial because "[h]ad the evidence following the violation of [his] Fourth Amendment rights been suppressed, the State would not have been able to sustain [its] burden of proving him guilty beyond a reasonable doubt[.]"

[¶22]   The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures."  U.S. Const. amend. IV.  A routine traffic stop is a seizure under the Fourth Amendment "even though the purpose of the stop is limited and the resulting detention quite brief." *Damato v. State*, 2003 WY 13, ¶ 9, 64 P.3d 700, 704 (Wyo. 2003) (quoting *Delaware v. Prouse*, 440 U.S. 648, 653, 99 S.Ct. 1391, 1396, 59 L.Ed.2d 660 (1979)).  We recognize three tiers of interaction between police and citizens:

> The least intrusive contact between a citizen and police is a consensual encounter. *Custer* [*v. State*, 2006 WY 72], ¶ 13, 135 P.3d [620,] 624-25 [(Wyo. 2006)].  A consensual encounter is not a seizure and does not implicate Fourth Amendment protections.  The second tier is the investigatory or Terry stop, named after the seminal case *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).  An investigatory detention is a seizure under the Fourth Amendment. *Custer*, ¶ 13, 135 P.3d at 624-25.  However, because of its limited nature, a law enforcement officer is only required to show "the presence of specific and articulable facts and rational inferences which give rise to a reasonable suspicion that a person has committed or may be committing a crime" in order to justify the detention. *Id.*, quoting *Wilson v. State*, 874 P.2d

---

[7] Mr. Mills also asserts that Deputy Borgialli violated the Fourth Amendment by asking Mr. Mills questions unrelated "in scope to the reason for the traffic stop" without reasonable suspicion.  We do not address the propriety of Deputy Borgialli's questions because his trial counsel's failure to raise the extension of the stop after the warning citation was completed, standing alone, constituted ineffective assistance of counsel.

7

215, 220 (Wyo. 1994). The most intrusive encounter between police and a citizen is an arrest. An arrest "'requires justification by probable cause to believe that a person has committed or is committing a crime.'" *Id.* at 625, quoting *Wilson*, 874 P.2d at 219-20.

*Harris v. State*, 2018 WY 14, ¶ 15, 409 P.3d 1251, 1254 (Wyo. 2018) (quoting *Flood v. State*, 2007 WY 167, ¶ 14, 169 P.3d 538, 543-44 (Wyo. 2007)).

[¶23] A traffic stop is more analogous to an investigative detention than a custodial arrest, and thus we evaluate the reasonableness of such stops under the two-part test articulated in *Terry v. Ohio*, 392 U.S. 1, 19-20, 88 S. Ct. 1868, 1879, 20 L.Ed.2d 889 (1968): "(1) whether the initial stop was justified; and (2) whether the officer's actions during the detention were 'reasonably related in scope to the circumstances that justified the interference in the first instance.'" *Garvin v. State*, 2007 WY 190, ¶ 13, 172 P.3d 725, 728-29 (Wyo. 2007) (quoting *Damato*, ¶ 9, 64 P.3d at 705). Here, the district court concluded that the initial stop was justified, and Mr. Mills does not challenge that conclusion on appeal. Consequently, our analysis focuses on *Terry's* second prong.

[¶24] To be reasonable, an "investigative detention must be temporary, lasting no longer than necessary to effectuate the purpose of the stop, and the scope of the detention must be carefully tailored to its underlying justification." *Brown v. State*, 2019 WY 42, ¶ 20, 439 P.3d 726, 732 (Wyo. 2019) (quoting *Campbell v. State*, 2004 WY 106, ¶ 12, 97 P.3d 781, 784 (Wyo. 2004)). During a routine traffic stop, law enforcement officers may request a driver's license, proof of insurance, and vehicle registration. *Id.* They may also run computer checks and issue warnings or citations. *Id.* "Generally, the driver must be allowed to proceed on his way without further delay once the officer determines the driver has a valid driver's license and is entitled to operate the vehicle." *Harris*, ¶ 17, 409 P.3d at 1254. When a seizure is prolonged beyond the time reasonably needed to complete those tasks, it can become unlawful. *Brown*, ¶ 20, 439 P.3d at 732.

[¶25] We do not impose an arbitrary time limit when determining the permissible length of a traffic stop. *Harris*, ¶ 17, 409 P.3d at 1254 (citing *Lindsay v. State*, 2005 WY 34, ¶ 19, 108 P.3d 852, 857 (Wyo. 2005)). "Instead, we examine whether law enforcement diligently pursued a means of investigation that was likely to confirm or dispel their suspicions quickly and without undue delay in detaining a defendant." *Id.* "Once the initial reason for a stop has been resolved, an officer must have specific, articulable facts and rational inferences giving rise to reasonable suspicion that another crime has been or is being committed to justify a continued detention." *Brown*, ¶ 20, 439 P.3d at 732. We evaluate the existence of reasonable suspicion from the totality of the circumstances:

> The "whole picture" must be taken into account. Common sense and ordinary human experience are to be employed, and

8

> deference is to be accorded a law enforcement officer's ability to distinguish between innocent and suspicious actions. Inchoate suspicions and unparticularized hunches, however, do not provide reasonable suspicion. Even though reasonable suspicion may be founded upon factors consistent with innocent travel, some facts must be outrightly dismissed as so innocent or susceptible to varying interpretations as to be innocuous.

*Damato*, ¶ 16, 64 P.3d at 707.

[¶26] The record supports the conclusion that law enforcement prolonged Mr. Mills' traffic stop beyond the time reasonably needed to effectuate its purpose. Deputy Borgialli diligently collected Mr. Mills' documentation, ran computer checks, and completed a warning citation. Instead of returning Mr. Mills' documents and allowing him to leave, however, Deputy Borgialli retained them and asked Mr. Mills to exit his vehicle, thereby extending the detention. *See United States v. Elliott*, 107 F.3d 810, 814 (10th Cir. 1997) ("an officer must return a driver's documentation before a detention can end").

[¶27] The State insists that Deputy Borgialli's request that Mr. Mills exit his vehicle was permissible because "a police officer is permitted to have the driver get out of his car during a traffic stop without violating the Fourth Amendment." It claims that this permissible request did not unreasonably extend the stop because Deputy Borgialli had not yet given Mr. Mills the warning citation or returned his documents, and still needed to "explain" the citation. Thus, the State reasons, the stop had not ended. While it is true that an officer may ask a driver to exit his vehicle during the course of a routine traffic stop, *Flood*, ¶ 19, 169 P.3d at 544 (citing *Pennsylvania v. Mimms*, 434 U.S. 106, 98 S.Ct. 330, 54 L.Ed.2d 331 (1977) (per curiam)), that request cannot prolong the stop beyond the time reasonably required to complete the purposes of the traffic stop in the absence of reasonable suspicion. *Cf. Gibson v. State*, 2019 WY 40, ¶ 10, 438 P.3d 1256, 1259 (Wyo. 2019) ("*So long as use of a dog does not extend a traffic stop's length*, a sniff to the exterior of a vehicle . . . does not violate the Fourth Amendment . . . .") (emphasis added).

[¶28] The fact that Deputy Borgialli had completed Mr. Mills' warning citation demonstrates that he had the time reasonably required to complete the purposes of the traffic stop. We decline to hold that Deputy Borgialli's purported desire to "explain" the warning citation after he completed it was related to the purpose of the traffic stop in these circumstances. A conclusion to the contrary would permit law enforcement to retain a citation and documents indefinitely in order to extend a stop that reasonably ought to have been completed. Thus, in the absence of reasonable suspicion, the Fourth Amendment obligated Deputy Borgialli to return Mr. Mills' documents promptly and allow him to continue on his way.

[¶29] We therefore cannot conclude that reasonable suspicion justified extension of the stop in this case. Because the motion to suppress did not address the existence of reasonable suspicion and because appellate counsel did not request a W.R.A.P. 21 hearing,[8]

---

[8] W.R.A.P. 21 provides:

> (a) Following the docketing of a direct criminal appeal, the appellant may file, in the trial court, a motion claiming ineffective assistance of trial counsel. The motion may be used to seek a new trial or to seek plea withdrawal. The motion shall be filed prior to the filing of the appellant's initial appellate brief. Upon a showing of extraordinary circumstances, the appellate court may grant leave to file a motion after appellant has filed his brief, but in no event shall a motion be filed after the case has been taken under advisement by the appellate court. A copy of the motion shall be served upon all trial counsel and the appellate court. The motion shall contain nonspeculative allegations of facts which, if true, could support a determination that counsel's representation was deficient and prejudiced the appellant. Any claims of ineffectiveness not made in the motion shall not be considered by the trial court unless the trial court determines that the interests of justice or judicial efficiency require the consideration of issues not specifically indicated in the motion. A response may be filed within 15 days after the motion is served.

> (b) Upon the filing of the motion, briefing in the appeal shall be stayed until further notice from the appellate court.

> (c) The trial court may grant or deny the motion without a remand from the appellate court. The trial court shall determine the motion within 90 days after the motion is filed, unless the determination is continued by written order of the trial court, which continuation may not exceed 90 days from the expiration of the initial 90 day period, unless the appellate court orders a further extension. If the trial court enters such a continuation order, the trial court shall provide a copy of the order to the appellate court. In no event shall a motion filed under this rule be deemed denied. The trial court shall enter an order determining the motion.

> (d) The order determining the motion shall include findings of fact and conclusions of law concerning the claimed deficient performance by counsel and the claimed prejudice suffered by appellant as a result. When disposition of a motion filed under this rule is made without a hearing, the order shall include a statement of the reason(s) for determination without hearing. The clerk of the trial court shall provide the clerk of the appellate court with a copy of the trial court's order disposing of the motion.

> (e) If trial court denies the motion, appellant may file a notice of appeal to challenge the trial court's order denying the motion. When such an appeal is docketed in the appellate court, that appeal shall be consolidated with the initial direct appeal. If the appellant does not appeal from the trial court's order denying the motion, the clerk of the appellate court shall notify the parties of a new briefing schedule for the initial appeal.

we are in the undesirable position of gleaning the facts from an incomplete record. What we do know is that DCI alerted Deputy Borgialli to a possible drug transaction, that Mr. Mills responded to one of Deputy Borgialli's repeated questions in an elevated tone of voice, and that an officer observed Mr. Mills place what he believed to be a brown paper bag under his seat. Those limited facts do not amount to reasonable suspicion. *Cf. Brown*, ¶ 41, 439 P.3d at 737-38 (concluding an abrupt turn on a dead-end street, inconsistency between stated destination and travel route, and probation status for possession of marijuana did not amount to reasonable suspicion); *Damato*, ¶¶ 19-26, 64 P.3d at 708-10 (findings that defendant was unusually nervous; misstated city in which he rented his car; made inconsistent statements about travel plans; had luggage in the back seat instead of the trunk; and had many fast food wrappers suggesting a "hard run" did not amount to reasonable suspicion). Thus, we perceive "a clear possibility this particular search and seizure was illegal." *Dickeson*, 843 P.2d at 611. Given that clear possibility, the failure to file a motion raising the extension of the stop demonstrates deficient performance of trial counsel. *See id.* Further, because the evidence against Mr. Mills at trial consisted almost exclusively of evidence that would have been suppressed upon a successful motion, we conclude a reasonable probability exists that the verdict would have been more favorable to him absent that deficiency.

[¶30]   We are mindful of several of our cases stating that, when a claim of ineffectiveness rests on counsel's failure to file a motion to suppress, "prejudice can be shown *only* by demonstrating that the motion would have been granted, thereby leaving the prosecution with little unsuppressed evidence to support a conviction." *Bittleston*, ¶ 31, 442 P.3d at 1295 (emphasis added) (quoting *Lemley v. State*, 2016 WY 65, ¶ 14, 375 P.3d 760, 764 (Wyo. 2016) (citing *Grissom v. State*, 2005 WY 132, ¶ 12, 121 P.3d 127, 132-33 (Wyo. 2005)); *see also Carter v. State*, 2010 WY 136, ¶ 12, 241 P.3d 476, 484 (Wyo. 2010) (quoting *Dettloff v. State*, 2007 WY 29, ¶ 19, 152 P.3d 376, 382-83 (Wyo. 2007)); *Siler v. State*, 2005 WY 73, ¶ 26 n.15, 115 P.3d 14, 27 n.15 (Wyo. 2005). Those cases derive the narrow proposition that an appellant can *only* demonstrate prejudice by showing that a motion to suppress *would have been granted* from *Page v. State*, 2003 WY 23, ¶ 8, 63 P.3d 904, 909 (Wyo. 2003), which relied on *Lancaster*, ¶ 58, 43 P.3d at 102, and *Dickeson*, 843 P.2d at 612, for that statement. While it is very often true that an appellant must show that a motion to suppress would have been granted to carry his burden of proving ineffective assistance, *Lancaster* and *Dickeson* do not impose such a rigid test as *Page* and its progeny suggest. Instead, those cases adhere to the more general, time-honored standard that an appellant must show "a reasonable probability that, but for counsel's errors, the outcome of the trial would have been different." *Lancaster*, ¶ 59, 43 P.3d at 102; *Dickeson*, 843 P.3d at 611-12.

[¶31]   Our lack of a record in this case is similar to what occurred in *Dickeson*. In that case, the defendant's purse and diary were searched without a warrant and defense counsel failed to file a motion to suppress the evidence derived from those items. *Dickeson*, 843 P.2d at 611. We found a clear possibility that had a proper motion been filed, the motion

11

may have been successful. We concluded, however, that the record was insufficient to make a final determination on the question. *Id.*

> A review of the enumerated exceptions demonstrates a clear possibility this particular search and seizure was illegal. Dickeson was not under arrest at the time the diary was seized, and she did not consent to the search of her purse and the seizure of the diary. A strong argument was available that an illegal search and seizure occurred under either the Wyoming or United States Constitutions. That argument would encompass the proposition that the search and seizure was not made pursuant to a warrant and does not fit within any of the recognized exceptions. We cannot decide at this time that the search and seizure was illegal. Since it was not challenged by trial counsel in the trial court, we are satisfied the State is entitled to an opportunity to develop a record and demonstrate, if it can, that the search of the person and the seizure of Dickeson's diary was permissible. . . . We do conclude, however, the failure to file a motion and raise the issue demonstrates deficient performance of trial counsel

*Dickeson*, 843 P.2d at 611.

[¶32] Under the circumstances reflected in this record, we find that Mr. Mills has shown a reasonable probability that, but for counsel's failure to challenge the duration of the stop and the actions of law enforcement officers in forcing him out of the vehicle to "explain" a warning, the outcome of the trial would have been different. This showing is sufficient to establish ineffectiveness, and it is not disputed that there would have been prejudice, because the State could not have proved its case if the drugs, paraphernalia, packaging material, and cash had been suppressed.

[¶33] However, as in *Dickeson*, it may be that the State could have shown that the duration of the stop was reasonable based on evidence that was not presented below if it had been confronted with a motion to suppress based on the duration of the stop, and we will therefore reverse and remand for further proceedings consistent with this opinion.[9]

---

[9] As already noted, Mr. Mills' counsel did not create a record through a W.R.A.P. 21 hearing. We do not mean to suggest that a defendant must support his ineffectiveness claim by rebutting every conceivable ground on which the State might defend its search, or that a Rule 21 hearing will always be necessary. However, the ability to flesh the record out when there has been no challenge below is the beauty of a Rule 21 hearing in this type of situation. The defendant makes his new suppression argument, and the State then has an opportunity to respond with evidence supporting the reasonableness of its search, if it has such evidence. The State is not trapped because there was no suppression motion and it had no reason to justify the search at trial, the defendant and the district court are not forced to guess the State's position, and we

Because we reverse and remand, we find it unnecessary to rule on Appellant's claim that there was plain error in allowing Deputy Borgialli and Office Dillard to testify as they did because they effectively opined that he was engaged in the distribution of the drugs, since the parties and the district court can address this issue if the matter is retried.

## *CONCLUSION*

[¶34]   Wyoming Rule of Criminal Procedure 12(b) precludes plain error review of issues not raised in Mr. Mills's motion to suppress evidence.  However, Mr. Mills' trial counsel provided ineffective assistance due to his failure to challenge the extension of Mr. Mills' traffic stop.  Reversed and remanded for further proceedings consistent with this opinion.

---

are presented with a complete record on appeal to determine whether counsel was effective or not. *Rodriguez,* ¶ 36 n.5, 435 P.3d at 410 n.5.